UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALEJANDRO ESTRADA,

   *Plaintiff*,

vs.

ST. MATTHEW'S UNIVERSITY
SCHOOL OF MEDICINE,

   *Defendant*.

Case No.:

## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Alejandro Estrada ("Alex"), pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local Rules 3.01(e) and 4.05, hereby moves this Court to enter a temporary restraining order against Defendant St. Matthew's University School of Medicine ("SMU" or the "University"), and states:

1. This case addresses the deceptive, unfair, and predatory trade practices, statutory violations, and breaches of contractual obligations engaged in by Defendant SMU – a Caribbean for-profit medical school that targets would-be medical students in the U.S. Plaintiff Alejandro "Alex" Estrada is one such victim of SMU's unlawful and tortious practices. In 2019, just as Alex was concluding his requirements for graduation from medical school, the University unilaterally modified its graduation requirements, imposing entirely new exam pre-test requirements not necessary for licensure. Thereafter, the University continued unilaterally modifying its requirements, arbitrarily imposing ever-increasing passing standards for the pre-test exams ***well in excess of the national passing standards*** set by the organizations administering the exams. Due

to the exigencies created by deadlines in connection with the 2021 Match,[1] immediate injunctive relief is necessary by issuance of a temporary restraining order ("TRO").

2.  This Motion is supported by the Declaration of Alejandro Estrada, attached hereto as **Exhibit 1**, and Plaintiff's Complaint, which has been filed contemporaneously herewith.

3.  Alex began his medical school studies at SMU in 2015.  Decl. ¶ 8.

4.  At the time Alex accepted SMU's offer of enrollment, and when he began medical school at SMU, SMU represented its graduation and exam requirements as those published in its Clinical Medicine Handbook (the "2015 Handbook"), a copy of which is attached as Exhibit 2 to Plaintiff's Complaint.  Decl. ¶ 9.

5.  The 2015 Handbook detailed the requirements Alex would have to satisfy as follows:

> 1. Students become eligible to take the USMLE Step 2 . . . examinations upon successful completion of the 5 core clerkships or 40 weeks of rotations and must comprise 4 core clerkships including Internal Medicine and Surgery, as well as a 4 week Primary Care rotation.  The approval of the Associate Dean of Clinical Medicine and the successful completion of the clerkships is required before a student can be certified to sit for these exams.  There are no exceptions to this rule.  In order to be certified . . . the student may be required to take additional step(s) to demonstrate comprehensive proficiency in the clinical sciences.
>
> 2. Students are required to write and pass USMLE Step 2 . . . prior to graduation. . . .

2015 Handbook at 210.

6.  In 2018, Alex completed all of the academic coursework required for graduation, and then began clinical rotations.  Decl. ¶¶ 14-16.

---

[1] The Residency "Match" program is discussed in detail in Paragraphs 62-77 of Plaintiff's Complaint.

7.  In 2020, Alex completed all of the clinical requirements for graduation, and then began preparing for the USMLE Step 2 Clinical Knowledge Exam ("Step 2 CK").  Decl. ¶¶ 16-17.

8.  Residency is the next step in Alex's medical training to become a licensed physician, and the Step 2 CK is a key component of Alex's application for the "Match" program which will match Alex to a residency program.  Decl. ¶ 34.

9.  In 2019 and 2020, SMU unfairly revised the Clinical Medicine Handbook and imposed additional exam requirements before it would allow a student to take the Step 2 CK.  The 2019 and 2020 revisions are attached to Plaintiff's Complaint as Exhibits 4 (the "Revised Handbook") and 5 (the "Current Handbook"), respectively.

10. Specifically, the Current Handbook provides as follows:

> All students are required to take a Comprehensive Clinical Science Examination (CCSE) to ascertain whether or not his/her preparation for the USMLE Step2CK [sic] has been successful.  **Students are required to take USMLE Step 2CK [sic] within 75 days of achieving satisfactory performance**[2] **on the CCSE.**

Current Handbook at 138 (emphasis added).

11. The new exam requirements that SMU now mandates are *not* otherwise required for licensure to practice medicine.  Decl. ¶¶ 10, 19.

12. Additionally, Alex has achieved a passing score on the unnecessary pre-test exam – the Comprehensive Clinical Science Examination (the "CCSE").  Decl. ¶¶ 20-21.

13. Notwithstanding the foregoing, SMU refuses to allow Alex to take the necessary licensing exam – the Step 2 CK.  Decl. ¶¶ 24-25.

---

[2] SMU does not define "satisfactory performance" in the Current Handbook.

14. Although it is not reflected in the Current Handbook, *see* n. 2, *supra*, SMU has established its own arbitrary, *ad hoc* scoring requirements for a student to "pass" the unnecessary CCSE exam as a prerequisite for the student to then be "approved" to take the Step 2 CK – the exam that *is* necessary for licensure.  Decl. ¶¶ 18, 22-23.

15. SMU's grossly inflated scoring requirements are well in excess of the passing score established by the National Board of Medical Examiners (the "NBME") – the organization that created and administers the otherwise unnecessary CCSE exam.  Decl. ¶¶ 20, 22-23.

16. Additionally, SMU *increases* what the University will consider a "passing" score on the CCSE *at will*.  Decl. ¶¶ 22-23.

17. The NBME has determined that a passing score on the CCSE is **209**.  Decl. ¶ 20.

18. In August 2020, Alex took the CCSE and passed with a score of **212**.  Decl. ¶ 21.

19. However, in June 2020, SMU notified Alex that SMU would require a score of **220** before it would consider him to have "passed" the CCSE – 11 points higher than the NBME passing score of 209.  Decl. ¶ 20, 22.  *See also* SMU's First Announcement, attached to Plaintiff's Complaint as Exhibit 6.

20. In August 2020, SMU then notified Alex that SMU increased its CCSE score requirement even further, and, effective immediately, would require a score of **222** before allowing a student to take the Step 2 CK.  Decl. ¶ 23.  *See also* SMU's Second Announcement, attached to Plaintiff's Complaint as Exhibit 7.

21. SMU is refusing to certify that Alex is a student at SMU – so that Alex can take the Step 2 CK – unless and until Alex first passes the otherwise unnecessary CCSE to SMU's arbitrarily high and ever-increasing standard.  Decl. ¶¶ 18-25.

4

22. It is imperative that Alex take the Step 2 CK with sufficient time to receive his results and have his residency application completed and reviewed to be competitive in the 2021 Match. Decl. ¶¶ 31-35.

23. The review period for 2021 Match applications begins October 21, 2020, at 9:00 a.m. Decl. ¶ 32.

24. Thus, it is impracticable if not impossible for Alex to first pass the unnecessary CCSE exam to SMU's ever-increasing standards, only to then be able to take the Step 2 CK, all with sufficient time to receive his results on the Step 2 CK as is necessary for Alex to complete his residency application before the review date for the 2021 Match. Decl. ¶¶ 31-35, 39.

25. The Match occurs only once annually. Decl. ¶ 11, 35.

26. If Alex's application and certifications are not complete in time for him to participate in the 2021 Match, his entire medical career will be delayed by at least one full year and he will suffer irreparable harm, as further detailed in Plaintiff's Complaint and Declaration. Decl. ¶¶ 30-35, 39.

27. The irreparable harm Alex will suffer if he is unable to take the Step 2 CK exam immediately is so imminent that it would be impractical if not impossible to avoid such harm with opportunity for notice and hearing on a Motion for Preliminary Injunction. Decl. ¶¶ 35, 39.

28. Exigent circumstances therefore exist that necessitate this Court granting a TRO against Defendant SMU to the extent required to avoid irreparable harm to Alex.

29. Alex respectfully requests that this Court enter a TRO restraining SMU from refusing to certify that Alex is a student at SMU and ordering SMU to immediately certify Alex to take the USMLE Step 2 CK exam.

30. Further injunctive relief likely will be necessary to ensure SMU's compliance with requirements for subsequent Match deadlines, but is not presently imminent, and will, therefore, be addressed in a separately filed Motion for Preliminary Injunction.

31. The relief sought herein is necessary to prevent irreparable harm to Alex.

32. The requested relief will not harm SMU.

## MEMORANDUM OF LAW

**I.   Standard of Review**

The Court may grant a TRO on the same grounds as a preliminary injunction. *Rumfish Y Vino Corp. v. Fortune Hotels, Inc.*, 403 F. Supp. 3d 1227, 1231 (M.D. Fla. 2019). "A district court may issue a preliminary injunction when the moving party demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest." *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 968 (11th Cir. 2005).

Additionally, a motion for a temporary restraining order must "(1) describe precisely the conduct sought to be enjoined; (2) set forth facts on which the Court can make a reasoned determination as to the amount of security which must be posted pursuant to Rule 65(c); (3) be accompanied by a proposed form of temporary restraining order prepared in strict accordance with the several requirements contained in Rule 65(b) and (d); and (4) be accompanied by a supporting legal memorandum or brief." *Rumfish*, 403 F. Supp. 3d at 1231.

As further detailed herein, Plaintiff plainly satisfies each of the foregoing requirements. **"[W]hen plaintiff's claim is sufficiently compelling, mandatory injunctions may be granted readily**." Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2948.2 (3d ed.) (emphasis added).

It is clear that Plaintiff's Complaint and claims for injunctive asserted relief therein entitle Alex to a preliminary injunction. One such basis is Plaintiff's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claims. *See Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1309 (S.D. Fla. 2008); *Laboratorios Roldan, C. por A. v. Tex Intern., Inc.*, 902 F. Supp. 1555, 1569-70 (S.D. Fla. 1995) (court granting preliminary injunction on the basis of a FDUTPA claim); *see also* Fla. Stat. §§ 501.201, *et seq.*

## II. Alex has a Substantial Likelihood of Success on the Merits

"The determination of whether there is a substantial likelihood of success on the merits 'does not contemplate a finding of fixed quantitative value. Rather, a sliding scale can be employed, balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits.'" *Faculty Senate of Florida Intern. Univ. v. Winn*, 477 F. Supp. 2d 1198, 1203 (S.D. Fla. 2007) (quoting *Fla. Med. Ass'n, Inc. v. U.S. Dept. of Health, Educ., & Welfare*, 601 F.2d 199, 203 n. 2 (5th Cir. 1979)). "The so-called 'sliding scale' is particularly appropriate in cases like this one where the plaintiff[] will be significantly and irreparably harmed in the absence of an injunction." *Am. Univ. of Caribbean, N.V. v. Caritas Healthcare, Inc.*, 08-20374-CIV, 2008 WL 11333088, at *6 (S.D. Fla. May 6, 2008).

Section 501.211(1) of the Florida Statutes provides that any aggrieved individual is entitled to injunctive relief:

> Without regard to any other remedy or relief to which a person is entitled, ***anyone aggrieved*** by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part ***and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part***.

(Emphasis added.) Clearly, Alex has demonstrated that he is an aggrieved party and is entitled to injunctive relief against Defendant SMU for its deceptive and unfair trade practices.

7

A deceptive trade practice is an act by the Defendant that is likely to mislead a consumer acting reasonably under the circumstances. *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003). When Alex applied to and chose to attend SMU, SMU did not require students to even take the CCSE, much less pass the CCSE with a score far exceeding the national passing standard that SMU increases seemingly randomly and at will. *See* Decl. ¶¶ 5, 7-10, 18, 20-23. Had Alex known that SMU would first impose such a barrier just as he was completing his graduation requirements and ready to enter the Match in pursuit of the final steps toward licensure, he would never have chosen to attend SMU. *See id.* at 7. Instead, he would have attended a different medical school. *Id.* Clearly, no student, including Alex, would reasonably anticipate that the medical school he has chosen to attend, and then expended substantial time and money in furtherance of a medical education and licensure, would arbitrarily impose unnecessary testing requirements as a prerequisite to taking the actual licensing exam at the eleventh hour of that student's medical education.

Prevailing on an unfair trade practice claim requires that the "injury to the consumer: (1) must be substantial; (2) must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) must be an injury that consumers themselves could not reasonably have avoided." *Porsche Cars N. Am., Inc, v. Diamond*, 140 So.3d 1090, 1096 (Fla. 2d DCA 2014).

SMU's conduct, and the injury to Alex resulting therefrom, plainly meets all three criteria. If SMU is permitted to continue demanding an inflated and ever-increasing passing score on the CCSE before it will allow Alex to take the Step 2 CK, Alex will be prevented from participating in the 2021 Match. Decl. ¶ 31. At a minimum, this will delay Alex's medical career by at least an entire year and require Alex to continue to attempt to meet an irrational and arbitrary standard

8

on an irrelevant exam in order for SMU to "consider" giving him permission to take the Step 2 CK.  Decl. ¶ 35.  Such detriment cannot be outweighed by any "countervailing benefits," as there are no countervailing benefits to consumers or competition from requiring students in Alex's position to obtain an inflated score on the CCSE before being allowed to take the Step 2 CK.  Lastly, Alex could not have reasonably avoided this harm as he could not have foreseen SMU's inflated testing requirements when he enrolled, nor can he avoid them now, as transferring to another medical school is not an option.  Decl. ¶¶ 7, 35.  Thus, there is a substantial likelihood that Alex will succeed on the merits of his FDUTPA claim.

### III.     Alex Will Suffer Irreparable Harm if the TRO is Not Granted

Irreparable harm results when a party suffers "any serious injury that cannot be quantified." *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1309 (S.D. Fla. 2008); s*ee also Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986) ("The plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm.").  Alex will clearly suffer irreparable harm if the Court denies this Motion.  Due to the impending October 21, 2020, deadline for 2021 Match applications to be completed before residency programs review applicants, Alex must be allowed to ***immediately*** take the Step 2 CK if he is to be able to schedule the exam, take the exam, and receive results before the Match application deadline.  If Alex does not sit for the Step 2 CK ***as soon as possible***, he will be excluded from residency interviews, he will not match with a residency program in the 2021 Match, his career will be delayed by at least a full year (until the 2022 Match), and he will be irreparably harmed as a result.  In *American University of the Caribbean*, the Southern District of Florida expressly found that medical students in the directly analogous position to Alex suffer irreparable harm:

> The irreparable harm also extends to the group of students who will be left in limbo because of the parties' contractual disputes. The clinical clerkship program is designed to be completed in time for the annual post-graduation residency match program—where students apply for post-graduation residencies. Some students may not be able to obtain clerkships, and that is a harm that cannot be remedied by money damages. Moreover, any delay in the completion of the required clerkships, has the potential of delaying a student's graduation date, which in turn could delay a student's ability to participate in his targeted residency match program. The students' potential harm from the resulting delay in the completion of their studies is also unquantifiable and irreparable.

*Am. Univ. of Caribbean*, 2008 WL 11333088 at *7 (internal citation omitted).

### IV. The Threatened Injury to Alex Outweighs Any Potential Harm to SMU

The harms to Alex are severe and greatly outweigh any potential harm to SMU, if SMU can even be harmed by the requested TRO. In addition to the irreparable harm to Alex that will result if the TRO is not granted, Alex will also suffer substantial monetary damages as a consequence of SMU preventing him from matching in the 2021 Match, including, *inter alia*, the additional living expenses incurred in the time waiting for the 2022 Match; the additional student expenses, including interest accruing on student loans, during the time Alex is waiting for the 2022 Match; and lost income, both in the time Alex is waiting for the 2022 Match and by shortening the ultimate duration of his working medical career as a whole, the latter of which is virtually incalculable. In contrast, granting the TRO would result in no harm to SMU. If SMU was compelled to certify Alex to take the Step 2 CK, SMU would not incur any expenses, dissipate any assets, or suffer any reputational harm.

### V. The TRO and Injunction Are Not Adverse to Public Policy

Public policy militates in favor of granting this Motion. Granting this Motion is necessary for Alex to be able to take the next step in his medical career without unnecessary delay. *See Am. Univ. of Caribbean*, 2008 WL 11333088 at *10 ("[T]he public will be benefitted, and not adversely

affected, by ensuring that medical students are able to timely complete their clinical studies."). There can be no dispute that there is a growing shortage of medical doctors in this country.[3] Further, there is no argument that Alex would be an unqualified doctor and granting this injunction would enable him to 'cut the line.'  Alex is only seeking to be allowed to *take* the licensing exam that would prove his qualifications.  After successfully completing his entire medical education, including all academic coursework and clinical rotations, Alex has earned the opportunity to succeed or fail on his own merits.  Furthermore, the public interest is also served by enjoining deceptive and/or unfair trade practices that violate Florida law.

## VI.     No Bond Should Be Required

The decision of whether to require security of any type is solely within the discretion of this Court.  *See Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1171 (11th Cir. 2018), *cert. denied sub nom. Goldenberg v. Transcon. Gas Pipe Line Co., LLC*, 139 S. Ct. 1634 (2019); *Sundor Brands, Inc. v. Borden, Inc.*, 653 F. Supp. 86, 93 (M.D. Fla. 1986).  *See also Wright & Miller*, § 2954.  Because there will be no harm to SMU if the TRO is granted, the Court should not require any bond.  If any bond is required by the Court, it should be nominal.

## VII.    Conclusion

For the foregoing reasons, this Court should grant the TRO.  Alex has clearly demonstrated that SMU's trade practices are deceptive and unfair in violation of FDUTPA, that he will suffer irreparable harm if the TRO is not granted, and that public policy militates in favor of granting the requested TRO.

---

[3] The Association of American Medical Colleges estimates that within 13 years the United States will face a shortage of between 54,100 and 139,000 medical doctors. Association of American Medical Colleges, *The Complexities of Physician Supply and Demand: Projections from 2018 to 2033* (2020).

WHEREFORE, Plaintiff Alejandro Estrada respectfully requests that this Honorable Court (i) enter a Temporary Restraining Order against Defendant St. Matthew's University School of Medicine, restraining Defendant from requiring that Alex take the NBME-CCSE and pass the NBME-CCSE exam in excess of the national passing standard as a prerequisite to SMU allowing Alex to take the USMLE Step 2 CK licensing exam, and compelling Defendant to immediately certify Alex to take the USMLE Step 2 Clinical Knowledge exam; (ii) set a preliminary injunction hearing within 14 days on this matter and any other matters brought before the Court on a Motion for Preliminary Injunction filed in advance thereof; and (iii) award such other and further relief as the Court deems just and proper.

Dated:  September 25, 2020

Respectfully submitted,

**MAGER PARÚAS, LLC**
2719 Hollywood Boulevard
Hollywood, Florida 33020
Phone: 954-763-2800
Email: service@mpjustice.com

*/s/  Scott A. Mager*
Scott A. Mager, Esq. (FBN: 768502)
Brandon G. Little, Esq. (FBN: 122212)

*Attorneys for Plaintiff*

## RULE 65(b)(B) CERTIFICATION

I HEREBY CERTIFY that, prior to initiating this action and requesting this TRO, the Plaintiff contacted John Marvin, Chancellor of SMU, and requested the relief sought by the Temporary Restraining Order; that the Chancellor forwarded Plaintiff's request to two Deans of SMU, Dr. Clifton and Dr. Reid; and that SMU did not grant Plaintiff's request.

I FURTHER CERTIFY that, prior to initiating this action and requesting this TRO, Brandon G. Little, Esq., Attorney for Plaintiff, contacted Defendant SMU's administrative office by telephone at (407) 977-8100, which is the contact telephone number listed on SMU's website, on two separate occasions; that Attorney Little attempted to speak with both the Registrar's office and legal department, first, to obtain from SMU the relief sought by the Temporary Restraining Order without the need for judicial intervention and, in the alternative, to ascertain SMU's ability and willingness to appear for hearing on a Motion for Preliminary Injunction; and that no one could be reached to address either request.

THEREFORE, for the reasons stated in this Motion, and in consideration of the foregoing certifications, justice requires that the Temporary Restraining Order should issue forthwith and without further notice to Defendant.

Dated:  September 25, 2020

                                                      */s/  Scott A. Mager*
                                                    Scott A. Mager, Esq. (FBN: 768502)