UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| ALEJANDRO ESTRADA, | ) |
| Plaintiff | ) ) ) ) |
| v. | ) Civil Action No: 6:20-cv-1763-ORL-41EJK |
| ST. MATTHEW'S UNIVERSITY SCHOOL OF MEDICINE, | ) ) ) ) |
| Defendant. | ) ) ) |

**DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

The Plaintiff, Alejandro Estrada, a student at St. Mathew's University School of Medicine (SMU), asks this Court to enter an order restraining SMU from applying its examination preparation policies and requiring SMU to certify him to sit for the USMLE Step 2-CK examination. The Court should deny that request because the plaintiff is unlikely to succeed on the merits of his case and he will not suffer irreparable harm should the motion be denied.[1]

**Factual Background**

Estrada enrolled at SMU in August 2015. The 2015 Handbook did not expressly require students to take the Comprehensive Clinical Science Examination (CCSE) test, which is administered by the National Board of Medical Examiners (NBME), prior to qualifying to take the USMLE Step 2 examination. However, the Handbook stated, "The approval of the

---

[1] While the Court's September 28, 2020 Order indicates that the parties should be prepared to address the issue of venue, SMU does not contest venue.

1

Associate Dean of Clinical Medicine… is required before a student can be certified to sit for the exams.  There are no exceptions to this rule.  In order to be certified to sit for either USMLE Step 2 CK or USMLE Step 2 CS, the student may be required to take additional step(s) to demonstrate comprehensive proficiency in the clinical sciences." Pl. Ex. 2 at 210.  At that time, students who, like Estrada, had failed clinical shelf exams were required to take additional steps, including achieving satisfactory performance on the CCSE prior to being permitted to take the USMLE Step 2 CK exam.  *See* Declaration of John Marvin (Marvin Decl.) ¶ 9, attached as Exhibit 1.

On or about September 5, 2019, a full year before Estrada's deadline to submit "match" applications, SMU revised its Student Handbook to include a requirement that ***all*** students successfully take the CCSE test prior to sitting for the USMLE Step 2 examination.  Pl. Ex. 4 at 231.  The 2019 Handbook explains that "All students are required to take a Comprehensive Clinical Science Examination (CCSE) to ascertain whether or not his/her preparation for the USMLE Step 2 CK has been successful."  *Id.*  It goes on to state that "[t]he passing standard for CCSE will be determined at the sole discretion of the university."  *Id.* at 232.  Students are required to achieve "satisfactory performance on the CCSE."  And, "University approval is also required before a student can be certified to sit for USMLE Step 2 CK." *Id.*

On June 8, 2020, SMU announced that it would require students to pass the CCSE test with a score of at least 220.  Pl. Ex. 6.  On June 19, 2020, SMU revised its handbook to state: "All students are required to take a Comprehensive Clinical Science Examination (CCSE) to ascertain whether or not his/her preparation for the USMLE Step 2 CK has been successful." Pl. Ex. 5 at 138.  Students are required to achieve "satisfactory performance on the CCSE."

2

*Id.* "Based upon the results of the CCSE, the student will take the USMLE Step 2 CK examination or continue remediation...." *Id.*

In August 2020, Estrada took the CCSE test and scored 212, barely above the NBME's suggested passing score of 209, but not a satisfactory score according to SMU's standards.

On August 31, 2020, SMU notified all students that it increased the CCSE passing score to 222. Pl. Ex. 7. As a result, under SMU's policies, Estrada is not qualified to sit for the USMLE Step 2 examination until he receives a CCSE score above 222.

Prior to submitting "match" applications for a residency position, Estrada must not only complete and pass the USMLE Step 2 CK and but also the USMLE Step 2 CS exam or, while the COVID pandemic is ongoing, alternative testing of clinical skills. Marvin Decl. ¶¶ 6, 15.

To date, Estrada has taken the CCSE three times, achieving scores of 200, 193, and 212 – all short of the 220 score that SMU deemed "satisfactory" at the time. Marvin Decl. ¶ 11. The fact that Estrada has struggled to demonstrate sufficient mastery of clinical knowledge – the subject of the CCSE and Step 2-CK exams – is consistent with his academic performance to date. *Id.* ¶ 12. He failed and accordingly had to repeat two of his basic science courses. *Id.* He had only an average score on the USMLE Step 1 exam. *Id.* Then, during his clinical rotations, he failed and had to re-take four out of the five core clinical shelf exams. *Id.* While Estrada's academic performance has been good enough to continue in the M.D. program at SMU, that is not the same thing as demonstrating sufficient mastery to both pass the Step 2 exams and "match." *Id.* ¶ 13. Demonstrating minimal competence in his studies is not the same thing as meeting the standard required to actually get a job (in this case, a residency) in the profession. *Id.* For this reason, Estrada has been doing remedial work, with SMU's

assistance and support, in an effort to become ready for the Step 2 exams. *Id.* SMU provides that remedial support at no additional charge to students. *Id.* ¶ 14.

## Argument

### I. Estrada is Not Likely to Succeed on the Merits.

In his Complaint, Estrada has alleged claims for breach of contract, breach of the covenant of good faith and fair dealing, violation of the Florida Deceptive and Unfair Trade Practices Act, fraud, and declaratory judgment. To support his claim for injunctive relief, Estrada focuses solely on his claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Dkt. No. 3 at 7-8. SMU will do the same.

The "FDUTPA is intended to 'protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (quoting § 501.202(2), Fla. Stat.). "A deceptive practice is one that is 'likely to mislead' consumers." *Id.* (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)). "An unfair practice is 'one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (internal quotations omitted)).

Estrada has not alleged any unfair or deceptive trade practice. He complains that SMU unilaterally changed its Handbook to include new arbitrary standards. SMU's ability to impose new standards was part of the alleged contract. As set forth in SMU's 2015 Handbook when he enrolled, SMU reserved the right to add "additional steps" for Step 2 certification. Pl. Ex.

4

2 at 210. Moreover, "implicit in the university's general contract with its students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious." *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 343 (Fla. 4th DCA 2008) (citing *Univ. of Miss. Med. Ctr. v. Hughes*, 765 So. 2d 528, 535 (Miss. 2000); *Mahavongsanan v. Hall*, 529 F.2d 448 (5th Cir. 1976); *Doherty v. S. Coll. of Optometry*, 862 F.2d 570 (6th Cir. 1988); *Nuttelman v. Case W. Reserve Univ.*, 560 F. Supp. 1 (N.D. Ohio 1981), *aff'd*, 708 F. 2d 726 (6th Cir. 1982)); *see also Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1562 (M.D. Ala. 1987) (holding university had right to modify its graduation requirements in bulletin), *aff'd*, 858 F.2d 744 (11th Cir. 1988); *Coveney v. President & Trs. of Coll. of Holy Cross*, 388 Mass. 16, 22, 445 N.E.2d 136, 140 (1983) ("A college is 'clearly entitled to modify [its rules and regulations] so as to properly exercise its educational responsibility.'"). In the academic context, "judicial intervention in any form should be undertaken only with the greatest reluctance." *Doherty v. S. Coll. of Optometry*, 862, F.2d 570, 576 (6th Cir. 1988) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985)). "This is the case especially regarding degree requirements in the health care field when the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession." *Id.* Where courts in Florida and across the country recognize the inherent right of educational institutions to formulate and change their academic requirements, such a practice cannot be said to be misleading or "immoral, unethical, oppressive, unscrupulous or substantially injurious." § 501.202(2), Fla. Stat.[2]

---

[2] Estrada's contract-based claims fail for the same reasons. *See Jallali,* 992 So. 2d at 343; *accord Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013).

SMU's requirement that all students achieve a strong score on the CCSE is not arbitrary or capricious. The purpose of this requirement is to protect the student's ability to obtain a residency, i.e., to successfully "match," following graduation from medical school. Students who fail any USMLE exam, or who pass but with only a low passing score, find it difficult if not impossible to obtain a residency. Marvin Decl. ¶ 7. Accordingly, SMU allows students to sit for an exam only when they have demonstrated that they have mastered the knowledge necessary to pass it successfully. *Id.* While NBME publishes what it considers to be a passing score on the CCSE, SMU makes its own determination, and periodically adjusts, what it deems to be "satisfactory performance" on the CCSE. *Id.* ¶ 10. SMU carefully and continuously studies the scores that its students achieve on both the CCSE and the Step 2-CK. *Id.* SMU wants to ensure that its standard for successful completion of the CCSE is a good predictor of successful performance on Step 2-CK. *Id.* For this reason, SMU's cutoff for "satisfactory performance" is higher than NBME's merely "passing" score. *Id.*

As courts have recognized, these types of goals are rationally related to SMU's "legitimate function of educating physicians." *Hughes*, 765 So. 2d at 542 (holding changes to requirements for passing Step I exam rationally related to medical school's "legitimate function of educating physicians"); *see also Ku v. State of Tennessee*, 322 F.3d 431, 438 (6th Cir. 2003) (requiring medical student to follow a particularized program of remediation before being allowed to reenter the program guided by professional judgment and careful deliberation); *Catalan-Aguilar v. R3 Educ., Inc.*, No. CV 14-12607-GAO, 2015 WL 6043598, at *1 (D. Mass. Oct. 15, 2015) (upholding policy requiring approval of administrators to sit for Step 2 exam upon satisfactory NBME practice exams); *Jallali*, 992 So. 2d at 344 (university

"was authorized to change its degree requirements . . . to require students to pass the Comlex Level II exam within six years of matriculation" "to ensure competency to practice osteopathic medicine, to anticipate a change in accreditation requirements, and to comply with a prerequisite of many residency programs"); *cf. Haberle v. Univ. of Alabama in Birmingham*, 803 F.2d 1536, 1541 (11th Cir. 1986) ("It may be unfortunate to spend years studying a discipline only to discover that one's capabilities do not pass academic muster. However, the academic community requires a general comprehensive examination to determine whether or not a student is properly qualified for doctoral accomplishments."); *Mahavongsanan*, 529 F.2d at 450 ("university's decision to require the comprehensive examination was a reasonable academic regulation within the expertise of the university's faculty").

Nor can Estrada argue he lacked sufficient notice. SMU imposed the CCSE testing requirement a full year before his "match" applications would be due. And, at the time he took the CCSE in late August, he had known that SMU's "satisfactory performance" was a score of 220 for almost three months.

Estrada's allegation that SMU's motive for imposing additional testing is to profit from requiring students to take remedial courses is spurious and untrue. Dkt. No. 3-1 at 5. SMU provides remedial support for Step 2 preparation at no additional charge to students. Marvin Decl. ¶ 14. Students pay tuition for their basic science and clinical courses, and once that tuition is paid, there is no additional charge from SMU for remaining in the program during remedial work and qualifying exams such as those Estrada is undertaking. *Id.* Simply put, there is no financial advantage to SMU to withholding its approval for Estrada to take the Step 2-CK exam. *Id.* In fact, the opposite is true. If solely motivated by financial gain, SMU would

7

allow students from whom it has collected all tuition to sit for the Step 2 exams at their earliest opportunity. SMU does not do that; instead, it continues to work with students in an effort to give them the best chance at success. *Id.*

## II.    Estrada Cannot Show Irreparable Harm.

To establish irreparable harm, Estrada must show that he will suffer an injury for which he cannot be adequately compensated if he ultimately prevails on the merits. *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1520 (11th Cir. 1983). For purposes of a preliminary injunction, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (citation omitted). The asserted irreparable harm must be "neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Estrada has failed to meet his burden to show that, without injunctive relief, he likely will suffer immediate irreparable harm that is not adequately compensable by money damages.

The harm stemming from failing to "match" this year would be a one-one year delay in Estrada's residency placement. Such harm is adequately compensable by money damages. *See, e.g., Sharick v. Se. Univ. of Health Scis., Inc.*, 780 So. 2d 136, 141 (Fla. 3d DCA 2000) (allowing damages for loss of a medical degree); *see also Montague v. Yale Univ.*, No. 3:16-CV-00885(AVC), 2017 WL 4942772, at *4 (D. Conn. Mar. 8, 2017) (suffering a delay in education analogous to a suspension can be remedied through monetary compensation); *Knoch v. Univ. of Pittsburgh*, No. 2:16-CV-00970-CRE, 2016 WL 4570755, at *8 (W.D. Pa. Aug. 31, 2016) ("The Court finds that while Plaintiff will suffer injury by not timely graduating because of his suspension, this injury is not irreparable"); *Baer v. Nat'l Bd. of Med. Examiners*, 392 F.

Supp. 2d 42, 49 (D. Mass. 2005) ("inability to continue as a medical student without interruption at Drexel, while desirable, is not a harm that is irreparable to Baer's potential medical career."); *see also Hodges v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 20-1456, 2020 WL 5017665, at *4 (E.D. La. Aug. 25, 2020) (collecting cases).

Nor will an injunction prevent the harm for which Estrada seeks relief.  It is not the case that if Estrada were permitted to sit for the Step 2-CK exam now, he would be in a position to "match" on October 21, 2020.  Marvin Decl. ¶ 15.  Passing Step 2-CK is just one element of several that he would need to satisfy in order to be ready to "match."  *Id.*  Estrada is at the beginning of that process, not the end of it.  *Id.*  In addition to passing Step 2-CK, Estrada also would need to begin the multi-step process to prove competency regarding Clinical Skills.  *Id.*  It already is not possible for Estrada to "match" on October 21, 2020. *Id.*

**Conclusion**

Plaintiff's motion for preliminary injunction should be denied.

October 1, 2020                                        Respectfully submitted,


                                                       By     */s/ Dale A. Evans Jr.*
                                                              Dale A. Evans Jr.
                                                              Florida Bar No. 98496
                                                              **LOCKE LORD LLP**
                                                              777 South Flagler Drive
                                                              East Tower, Suite 215
                                                              West Palm Beach, FL  33401
                                                              Telephone:     (561) 833-7700
                                                              Facsimile:      (561) 655-8719
                                                              dale.evans@lockelord.com

        Daryl Lapp, *pro hac vice forthcoming*
        **LOCKE LORD LLP**
        111 Huntington Avenue, 9th Floor
        Boston, MA  02199
        Telephone:    (617) 239-0174
        Facsimile:    (866) 955-8813
        daryl.lapp@lockelord.com

        Elizabeth Kelly, *pro hac vice forthcoming*
        **LOCKE LORD LLP**
        111 Huntington Avenue, 9th Floor
        Boston, MA  02199
        Telephone:    (617) 239-0774
        Facsimile:    (866) 955-9265
        liz.kelly@lockelord.com

        *Counsel for Defendant St. Matthew's University School of Medicine*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October, 2020, I presented the foregoing Notice of Appearance to the Clerk of Court for filing and uploading to the CM/ECF system, which will provide a notice of electronic filing to:

Scott A. Mager, Esq.
Brandon G. Little, Esq.
Mager Parúas, LLC
2719 Hollywood Blvd.
Hollywood, FL  33020
service@mpjustice.com

*Counsel for Plaintiff Alejandro Estrada*

        */s/ Dale A. Evans Jr.*
        Dale A. Evans Jr.
        Florida Bar No.:  98496