UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

_____
                                 )
ALEJANDRO ESTRADA,      )
                                 )
    Plaintiff                )
                                 )
v.                               )  Civil Action No: 6:20-cv-1763-ORL-41EJK
                                 )
ST. MATTHEW'S UNIVERSITY  )
SCHOOL OF MEDICINE,       )
                                 )
    Defendant.          )
_____)

## DEFENDANT ST. MATTHEW'S UNIVERSITY SCHOOL OF MEDICINE'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, Defendant St. Matthew's University School of Medicine (SMU) hereby moves to dismiss all claims asserted against it in Plaintiff Alejandro Estrada's Complaint for failure to state a claim.

### Introduction

Estrada is a medical student at SMU. He alleges that SMU arbitrarily and capriciously changed its Clinical Medicine Handbook after he enrolled to require additional and more onerous pre-testing requirements, which prevent him from taking the United States Medical Licensing Examination (USMLE) Step 2 CK examination, the passing of which is required for him to participate in the residency matching program. His complaint purports to assert claims against SMU for declaratory judgment (Count I), injunctive relief (Count II), deceptive and unfair trade practices (Count III), breach of contract (Counts IV, VI, and VIII), breach of the implied covenant of good faith and fair dealing (Counts V, VII and IX), and fraud (Count X).

Estrada's claims all fail because the Clinical Medicine Handbook expressly allowed SMU to adopt additional pre-testing requirements for taking the USMLE exams; under Florida Law, SMU had the right to change its educational standards; Plaintiff's claim that SMU acted in arbitrary or capricious manner is conclusory and unsupported by the factual allegations; and Estrada has failed to identify any fraud, misrepresentation, or unfair and deceptive act on the part of SMU.

**Factual Background**

Students of foreign medicals schools who seek to practice medicine in the United States must be certified by the Educational Commission for Foreign Medical Graduates (ECFMG) and must take and pass the USMLE examinations. Compl. ¶ 22. There are three stages to the USMLE. The examination at issue in this case is the Step 2 CK exam, which is designed to assess whether medical school students or graduates can apply medical knowledge of clinical science to provide patient care under supervision. Compl. Ex. 1. The Step 2 CK scores are a critical component in medical student applications for the residency match program. Compl. ¶ 39. The match is the system used to place medical student into residency training programs in the United States teaching hospitals. Compl. ¶ 62. The match is conducted annually. Compl. ¶¶ 63-65. In order to be certified by the ECFMG, students also must pass the Occupational English Test (OET). Compl. ¶ 26. The deadline for obtaining ECFMG certification is February 2021. Compl. ¶ 75.

Estrada enrolled as a medical student at SMU in August 2015. Compl. ¶ 31. At that time, the Clinical Medicine Handbook (the 2015 Handbook) provided in relevant part:

> Students become eligible to take the USMLE Step 2 CS & CK examinations upon successful completion of the 5 core clerkships or 40 weeks of rotations

> and must comprise 4 core clerkships including Internal Medicine and Surgery, as well as a 4 week Primary rotation. The approval of the Associate Dean of Clinical Medicine and the successful completion of the clerkships is required before a student can be certified to sit for these exams. There are no exceptions to this rule. In order to be certified to sit for either USMLE Step 2 CK or USMLE Step 2 CS, the student may be required to take additional step(s) to demonstrate comprehensive proficiency in the clinical sciences.

Compl. Ex. 2 at 210.

On or about September 5, 2019, a full year before Estrada's deadline to submit match applications, SMU revised its Handbook to include a requirement that all students successfully take the NBME Comprehensive Clinical Sciences Examination (CCSE) prior to sitting for the USMLE Step 2 examination. Compl. ¶ 40 & Ex. 4 at 231. The 2019 Handbook provided in relevant part:

> All students are required to take a Comprehensive Clinical Science Examination (CCSE) to ascertain whether or not his/her preparation for the USMLE Step 2CK [sic] has been successful. … The passing standard for CCSE will be determined at the sole discretion of the university. Based upon the results of the CCSE, the student will take the USMLE Step 2CK [sic] examination or participate in university-approved remediation. … University approval is also required before a student can be certified to sit for USMLE Step 2 CK.

Compl. ¶ 41 & Ex. 4 at 231-32. The CCSE covers similar content to the USMLE Step 2 CK examination and is used to assess readiness for the Step 2 CK exam. Compl. Ex. 1. The CCSE score is an estimate of performance on Step 2 CK. *Id.*

On June 8, 2020, SMU announced that it would require students to pass the CCSE test with a score of at least 220. Compl. ¶ 51 & Ex. 6. The June 8 notice also provided that after passing the CCSE, students are required to pass the Comprehensive Clinical Science Self-Assessment (CCSSA) with a passing score of 250 or higher. *Id.* The purpose of the CCSSA

3

requirement is to confirm that the student's knowledge is staying current and that they still are ready for the Step 2 CK exam. *Id.*; Compl. Ex. 1.

On June 19, 2020, SMU updated its handbook to state, "All students are required to take a Comprehensive Clinical Science Examination (CCSE) to ascertain whether or not his/her preparation for the USMLE Step 2CK [sic] has been successful." Compl. ¶ 42 & Ex. 5 at 138. Students are required to achieve "satisfactory performance on the CCSE." *Id.* "Based upon the results of the CCSE, the student will take the USMLE Step 2CK [sic] examination or continue remediation...." *Id.*

In August 2020, Estrada took the CCSE test and scored 212, barely above the NBME's suggested passing score of 209, but not a satisfactory score according to SMU's standards. Compl. ¶ 50.

On August 31, 2020, SMU notified all students that it increased the CCSE passing score to 222. Compl. ¶ 52, Pl. Ex. 7.

In September 2020, SMU announced that prior to taking the OET, students must first complete SMU's pre-test preparation course, otherwise they are subject to discipline. Compl. ¶ 56.

Estrada alleges that he will be damaged as a result of SMU's additional pre-testing requirements because he will not be able to participate in the match this year and will suffer losses associated with waiting a year to participate in the next match. Compl. ¶ 77.

**Legal Standard**

To survive a motion to dismiss for failure to state a claim, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Boyle v. City of Pell City*,

866 F.3d 1280, 1286 (11th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But there must be "enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. In determining whether the Complaint states a plausible claim for relief, the Court need not credit bare legal conclusions unsupported by any actual fact. *Iqbal*, 556 U.S. at 662, 678 (explaining that "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations"). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79. *See also Twombly*, 550 U.S. at 555; *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.").

## Argument

**I.     The Complaint Fails to State a Claim for Breach of Contract.**

In Counts IV, VI and VIII, Estrada alleges that the 2015, 2019 and 2020 Handbooks are contracts and that SMU breached them by "unilaterally, arbitrarily, and capriciously" changing the prerequisites for taking the USMLE Step 2 CK exam. Compl. ¶¶ 113-14, 120-121, 127-128. Presumably, Estrada has pleaded these Counts in the alternative; otherwise he

has alleged and admitted that he has agreed to and is contractually bound to Handbook changes that have occurred over time.

"Under Florida law, the legal relationship between a private university and a student is 'solely contractual in character.'" *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (quoting *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008)). "The university 'may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college.'" *Id.* (quoting *Univ. of Miami v. Militana*, 184 So. 2d 701, 704 (Fla. 3d DCA 1966)). "These terms may be derived from university publications such as the student handbook and catalog." *Id.* (citing *Jallali*, 992 So. 2d at 342). "A court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." *Id.* (citing *Jallali*, 992 So. 2d at 343).

"[I]mplicit in the university's general contract with its students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious." *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 343 (Fla. 4th DCA 2008) (citing *Univ. of Miss. Med. Ctr. v. Hughes*, 765 So. 2d 528, 535 (Miss. 2000); *Mahavongsanan v. Hall*, 529 F.2d 448 (5th Cir. 1976); *Doherty v. S. Coll. of Optometry*, 862 F.2d 570 (6th Cir. 1988); *Nuttelman v. Case W. Reserve Univ.*, 560 F. Supp. 1 (N.D. Ohio 1981), *aff'd*, 708 F. 2d 726 (6th Cir. 1982)); *see also Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1562 (M.D. Ala. 1987) (holding university had right to modify its graduation requirements in bulletin), *aff'd*, 858 F.2d 744 (11th Cir. 1988); *Coveney v. President & Trs. of Coll. of Holy Cross*, 388 Mass. 16, 22, 445 N.E.2d

136, 140 (1983) ("A college is 'clearly entitled to modify [its rules and regulations] so as to properly exercise its educational responsibility.'"). In the academic context, "judicial intervention in any form should be undertaken only with the greatest reluctance." *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 576 (6th Cir. 1988) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985)). "This is the case especially regarding degree requirements in the health care field when the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession." *Id.*

Thus, all three breach of contract counts fail because SMU had the inherent right to modify its educational requirements. Estrada's complaint fails to raise a plausible allegation that SMU's modifications to its Handbook were made in bad faith or arbitrary and capricious. The changes were made and applied to Estrada well in advance of any relevant deadline that he had to meet with respect to his match and he was given sufficient notice and opportunity to meet the requirements and deadlines. SMU imposed the CCSE testing requirement a full year before his match applications would be due. And, at the time he took the CCSE in late August, he had known that SMU's "satisfactory performance" was a score of 220 for almost three months.

Estrada's allegation that SMU's actions were "arbitrary and capricious" is merely conclusory and should be disregarded. In fact, Estrada's own allegations show that SMU's pre-testing retirements were rational and served a legitimate purpose; they were adopted to ensure that SMU students were prepared to take and would likely pass the USMLE Step 2 CK Exam, which is critical to students' match opportunities. *See* Compl. ¶¶ 24, 39, 48, Ex. 1 (definition of CCSE and CCSSA). As courts have recognized, these types of goals are

7

rationally related to SMU's "legitimate function of educating physicians." *Hughes*, 765 So. 2d at 542 (holding changes to requirements for passing Step I exam rationally related to medical school's "legitimate function of educating physicians"); *see also Ku v. State of Tennessee*, 322 F.3d 431, 438 (6th Cir. 2003) (requiring medical student to follow a particularized program of remediation before being allowed to reenter the program guided by professional judgment and careful deliberation); *Catalan-Aguilar v. R3 Educ., Inc.*, No. CV 14-12607-GAO, 2015 WL 6043598, at *1 (D. Mass. Oct. 15, 2015) (upholding policy requiring approval of administrators to sit for Step 2 exam upon satisfactory NBME practice exams); *Jallali*, 992 So. 2d at 344 (university "was authorized to change its degree requirements . . . to require students to pass the Comlex Level II exam within six years of matriculation" "to ensure competency to practice osteopathic medicine, to anticipate a change in accreditation requirements, and to comply with a prerequisite of many residency programs"); *cf. Haberle v. Univ. of Alabama in Birmingham*, 803 F.2d 1536, 1541 (11th Cir. 1986) ("It may be unfortunate to spend years studying a discipline only to discover that one's capabilities do not pass academic muster. However, the academic community requires a general comprehensive examination to determine whether or not a student is properly qualified for doctoral accomplishments."); *Mahavongsanan*, 529 F.2d at 450 ("university's decision to require the comprehensive examination was a reasonable academic regulation within the expertise of the university's faculty").

Estrada's contract claims fail for an additional reason based on the clear and unambiguous language of the Handbook. "When a contract is clear and unambiguous, the court's role is to enforce the contract as written, not to rewrite the contract to make it more

reasonable for one of the parties." *Snyder v. Florida Prepaid College Board*, 269 So. 3d 586, 592 (Fla. 1st DCA 2019).  Accepting as true the allegation in Count IV, that the 2015 Handbook was a contract (Compl. ¶ 113), Estrada has not plausibly alleged any breach of the contract based on SMU's adoption of pre-testing requirements for the USMLE Step 2 CK exam. Compl. ¶ 114.  SMU's ability to impose new standards was part of the alleged contract.  The contract specifically provided that students had to be approved by SMU to take the USMLE Step 2 CK exam and that they "may be required to take additional step(s)" to show their proficiency in basic sciences and readiness for the exam.   Compl. Ex. 2 at 210.  Here, given Estrada's admissions as to the purpose of the CCSE and CCSSA with respect to the USMLE Step 2 CK exam (Compl. ¶¶ 24, 48, Ex. 1), SMU's requirement that students take and pass the CCSE exam and the CCSSA exam with certain scores prior to taking the USMLE Step 2 CK exam cannot, as a matter of law, be said to be a breach of or deviation from these policies.

Accepting as true Estrada's allegation in Count VI that the 2019 Handbook was a contract (Compl. ¶ 120), Estrada has not plausibly alleged any breach of the contract based on SMU's pre-testing requirements for the USMLE Step 2 CK exam.  Compl. ¶ 121.  The 2019 Handbook continued to require that students be approved by SMU to take the USMLE Step 2 CK exam and also expressly required students to take the CCSE, providing that "[t]he passing standard for CCSE will be determined at the sole discretion of the university."  Compl. ¶ 41 & Ex.  4 at 231-32.  Again, SMU's requirement that students take and pass the CCSE exam and the CCSSA exam with certain scores prior to taking the USMLE Step 2 CK exam cannot, as a matter of law, be said to be a breach of or deviation from these policies.

Accepting as true Estrada's allegation in Count VIII, that the 2020 Handbook is a contract (Compl. ¶ 127), Estrada has not plausibly alleged any breach of the contract based on SMU's pre-testing requirements for the USMLE Step 2 CK exam. Compl. ¶ 128. The 2020 Handbook expressly requires students to take the CCSE "to ascertain whether or not his/her preparation for the USMLE Step 2CK [sic] has been successful." Compl. ¶ 42 & Ex. 5 at 138. And it states that students are required to achieve "satisfactory performance on the CCSE." *Id.* Moreover, considering the contract as a whole, in light of the June 2020 bulletin expressly requiring the CCSSA exam, Compl. Ex. 6, SMU's pre-testing requirements do not constitute a breach of or deviation from these policies as a matter of law.[1]

## II. The Complaint Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.

In Counts V, VII, and IX, Estrada alleges that SMU breached the implied covenant of good faith and fair dealing contained in the 2015, 2019, and 2020 Handbooks when it changed its pretesting requirements and refused to certify him to take the USMLE Step 2 CK exam. Compl. ¶¶ 116-17, 123-24, 130-31. "The 'implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations.'" *Mangravite v. Univ. of Miami*, 838 F. Supp. 2d 1326, 1332 (S.D. Fla. 2011) (quoting *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a

---

[1] Estrada also alleges that SMU's "Official Catalogue" makes no mention of the CCSE pretesting requirements. Compl. ¶ 47. Estrada does not allege that this document constitutes part of SMU's contract with him, nor could he. The document contains a disclaimer, "The information in this catalogue is subject to change. Such changes may be without notice. Potential students should not consider this catalog to represent a contract between St. Matthew's University and an entering student." Compl. Ex. 3 at 37. Estrada also does not even allege that he received or read this document upon enrolling at SMU.

specific contractual obligation." *Id.* (quoting *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). "[The Eleventh Circuit] has held that a claim for a breach of implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Id.* As explained above, SMU did not breach any of the express terms of the Handbooks by imposing the CCSE and CCSSA requirements; therefore, his claim that SMU breached the covenant of good faith and fair dealing fails as a matter of law.

Estrada also alleges that SMU breached the implied covenant of good faith and fair dealing contained in the 2015, 2019, and 2020 Handbooks when in September 2020, SMU announced that prior to taking the OET, students must first complete SMU's pre-test preparation course, otherwise they are subject to discipline. Compl. ¶¶ 56, 116-17, 123-24, 130-31. However, it was well within SMU's recognized discretion to impose discipline for failing to follow SMU policy. *See McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006) ("a private university has broad discretion in what rules and regulations it shall issue and how it enforces its rules."). And, SMU could not have frustrated Estrada's ability to match or graduate where it imposed the OET pre-test requirement nearly five months before Estrada's February 2021 deadline for obtaining ECFMG certification. Estrada's claim for breach of the covenant of good faith and fair dealing based on SMU's OET pre-testing thus fails as a matter of law.

### III.     The Complaint Fails to State a Claim for Fraud.

In Count X, Estrada alleges that in its Handbook and the "Frequently Asked Questions" section of SMU's website (the FAQ), SMU made false statements of material fact in its

11

representations about SMU's testing and graduation requirements. Compl. ¶ 134.[2] To state a claim for fraudulent misrepresentation, the Complaint must allege: "(1) a false statement concerning material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citing *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)). "A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879–80 (Fla. 4th DCA 2000). "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id.* (quoting *State v. Mark Marks, P.A.*, 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995), approved by, 698 So. 2d 533 (Fla. 1997) (citation omitted)).

Fraud claims must be pled with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). The purpose of Rule 9(b) is to give defendants fair notice. *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997). The requirements of Rule 9(b) are met only if the complaint states: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff,

---

[2] Without specificity, the Complaint also alleges that the Official Catalogue misinforms students about licensing exam and graduation requirements and is otherwise deceptive. Compl. ¶ 81. However, the Complaint does not allege that the Official Catalogue contains a material false statement. Compl. ¶ 134.

12

and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1371 (11th Cir. 1997). "A bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019).

Estrada fails to allege with any particularity what statements in the Handbooks were false. Compl. ¶ 134. To the extent Estrada relies on the same Handbook sections underlying his breach of contract claims, those claims fail for the reasons stated above; the Handbooks allowed SMU to impose additional pre-testing requirements on Estrada and, on their face, they do not contain any false statements. Moreover, the allegations amount to no more than an impermissible attempt to restate breach of contract claims as fraud claims. *See CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at *10 (M.D. Fla. Feb. 15, 2018).

Estrada's allegation that the FAQ contains false statements of material fact also fails to state a plausible claim for relief because it is self-evident that the statements are true. Estrada alleges that the answer to the question, "What tests will I need to take *to get licensed in the U.S.*?" (emphasis added) does not disclose SMU's additional requirements related to the CCSE exam. Compl. ¶¶ 82-83. However, it is true that the CCSE exam is not required to obtain a license in the U.S. – a point Estrada concedes. Compl. ¶¶ 22-23, 30. The question was not, "what tests will SMU require that I take to sit for the Step 2 CK exam." SMU did not undertake the duty to address every testing prerequisite in its website FAQ. Nor has Estrada alleged any fiduciary or other relation of trust or confidence between himself and SMU that would create a duty to disclose that information. Estrada also has not alleged with any particularity how he

13

relied on the FAQ statements, when he allegedly read the statements and relied on them, or what SMU gained as a consequence. The fraud claim fails as a result.

## IV. The Complaint Fails to State a FDUTPA Claim.

In Count III, Estrada alleges that SMU engaged in unfair and deceptive acts and practices in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Compl. ¶¶ 105-108. The "FDUTPA is intended to 'protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (quoting § 501.202(2), Fla. Stat.). "A deceptive practice is one that is 'likely to mislead' consumers." *Id.* (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)). "An unfair practice is 'one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (internal quotations omitted)).

Estrada has not alleged any unfair or deceptive trade practice. As explained above, he has failed to state a claim for fraud. To the extent Estrada's allegations are based on the fact that SMU has imposed pre-testing requirements for taking the USMLE Step 2 CK exam, as explained above, SMU's ability to impose additional standards was part of the express terms of the Handbook. Compl. ¶ 12. Moreover, where courts in Florida and across the country recognize the inherent right of educational institutions to formulate and change their academic

requirements, *see supra* pages 5-7, such a practice cannot be said to be misleading or "immoral, unethical, oppressive, unscrupulous or substantially injurious." § 501.202(2), Fla. Stat.

In conclusory fashion, Estrada also alleges that the "Official Catalogue" is used to misinform and deceive prospective students. Compl. ¶ 16. The Official Catalogue does not purport to contain all the educational or testing policies of SMU. Compl. Ex. 3. Moreover, it contains a disclaimer, stating that the information in the catalogue is subject to change. *Id.* at 37.

Estrada also alleges that the "Frequently Asked Questions" section of SMU's website (the FAQ) "deceptively omits" SMU's CCSE pre-exam requirements. Compl. ¶ 82. As explained above, however, the FAQ is not false or deceptive, but is entirely accurate.

**V.     The Complaint Fails to State a Claim for Declaratory Judgment.**

In Count I, Estrada seeks a variety of declarations under 28 U.S.C. §§ 2201-2202. Compl. ¶¶ 93-94. The declarations he seeks are allegations from his breach of contract, FDUTPA, and fraud claims, rephrased as declarations. *Id.* The Court "must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim." *Berkower v. USAA Cas. Ins. Co.*, No. 15-23947-CIV, 2016 WL 4574919, at *3 (S.D. Fla. Sept. 1, 2016); *see also Fernando Grinberg Tr. Success Int. Properties LLC v. Scottsdale Ins. Co.*, No. 10-20448-CIV, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010) ("[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief.").

15

Moreover, because Estrada has failed to state a claim for relief under substantive law, there is no case or controversy left with respect to which the Court can give relief. As a result, the claim for declaratory judgment is moot. *See State Farm Mut. Auto. Ins. Co. v. Coker*, 505 F. App'x 824, 827 (11th Cir. 2013); *Zurich Am. Ins. Co. v. S.-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1282 (M.D. Fla. 2017).

## VI. The Complaint Fails to State a Claim for Injunctive Relief.

Estrada's claim in Count II for equitable relief in the form of injunctive relief does not set forth any legal basis for the claim, nor does it allege that he lacks an adequate remedy at law and, as such, it fails to state a claim for which relief may be granted. *See Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012).

## Conclusion

The Plaintiff's Complaint should be dismissed with prejudice.

October 28, 2020                                        Respectfully submitted,

                                           By      */s/ Dale A. Evans Jr.*
                                                       Dale A. Evans Jr.
                                                       Florida Bar No. 98496
                                                       **LOCKE LORD LLP**
                                                       777 South Flagler Drive
                                                       East Tower, Suite 215
                                                       West Palm Beach, FL  33401
                                                       Telephone:     (561) 833-7700
                                                       Facsimile:      (561) 655-8719
                                                       dale.evans@lockelord.com

                                                       *Counsel for Defendant St. Matthew's*
                                                       *University School of Medicine*

**CERTIFICATE OF SERVICE**

I certify that on the 28th day of October 2020, I presented the foregoing document to the Clerk of Court for filing and uploading to the CM/ECF system, which will provide a notice of electronic filing to:

Scott A. Mager, Esq.
Brandon G. Little, Esq.
Mager Parúas, LLC
2719 Hollywood Blvd.
Hollywood, FL  33020
service@mpjustice.com

*Counsel for Plaintiff Alejandro Estrada*

            */s/ Dale A. Evans Jr.*
            Dale A. Evans Jr.
            Florida Bar No.:  98496

83821295