UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ALEJANDRO ESTRADA,**

    **Plaintiff,**

v.                                               **Case No:  6:20-cv-1763-Orl-41EJK**

**ST. MATTHEW'S UNIVERSITY
SCHOOL OF MEDICINE,**

    **Defendant.**

**ORDER**

THIS CAUSE is before the Court on Plaintiff's Motion for Temporary Restraining Order ("Motion," Doc. 3), construed as a motion for preliminary injunction.[1] The Court held an expedited hearing on the Motion, (Min. Entry, Doc. 19, at 1), and denied the Motion by Endorsed Order (Doc. 21), indicating that this written Order would follow, (*id.*).

### I.  BACKGROUND

Plaintiff is a medical student at Defendant St. Matthew's University School of Medicine, which is located in the Cayman Islands. (Estrada Decl., Doc. 3-1, at 1). Plaintiff seeks to sit for the "USMLE Step 2 Clinical Knowledge Exam" ("USMLE Step 2 Exam"), a medical licensing exam that students are required to pass prior to being "match[ed]" into a residency program. (Doc. 3 at 3). Plaintiff alleges that Defendant is preventing him from sitting for the USMLE Step 2 Exam based on an "unnecessary" pretest on which Defendant is imposing an "arbitrarily high and ever-increasing standard" for passage, which exceeds the national passing standard. (*Id.*; Compl., Doc. 1, at 1). Finally, according to Plaintiff, if Defendant prevents Plaintiff from sitting for the USMLE

---

[1] To the extent the Motion requested a temporary restraining order, that request was previously denied by the Court. (Sept. 28, 2020 Order, Doc. 7, at 2).

Page **1** of 6

Step 2 Exam and being matched into a residency program for the 2021 cycle, which begins on October 21, 2020, "[Plaintiff's] entire medical career will be delayed by at least one full year" because the application cycle only occurs annually. (Doc. 1 at 2). Thus, Plaintiff alleges that "[t]ime is of the essence." (*Id.*).

Plaintiff asserts claims for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. (*Id.* at 20–25). Plaintiff requests declaratory and injunctive relief. (*Id.* at 18–20, 25–28). Plaintiff filed the instant Motion, requesting, *inter alia*, a preliminary injunction "compelling [Defendant] to immediately certify [Plaintiff] to take the USMLE Step 2 [Exam]." (Doc. 3 at 12).

## II. LEGAL STANDARD

To obtain a preliminary injunction, the movant must sufficiently establish that "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)). "A preliminary injunction, moreover, 'is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites.'" *Llovera v. Fla.*, 576 F. App'x 894, 896 (11th Cir. 2014) (per curiam) (quoting *Forsyth Cnty.*, 633 F.3d at 1039).

## III. ANALYSIS[2]

---

[2] As a threshold issue, it initially appeared to the Court that venue may not be proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391. However, Defendant has now consented to venue. *Augusta Nat'l, Inc. v. Green Jacket Auctions, Inc.*, 2018 U.S. Dist. LEXIS 21033, at *9 (S.D. Ga. February 8, 2018) ("Because Defendant consented to this Court's personal jurisdiction by waiver, it is 'subject to' this Court's personal jurisdiction under § 1391(c)(2) and thus resides in this District under § 1391(b)(1). Therefore, venue is proper in this District.").

Plaintiff must demonstrate that it has satisfied its burden as to all four elements discussed above in order for the Court to issue a preliminary injunction. *Id.* The Court begins with the element of substantial likelihood of success on the merits. Plaintiff bases his Motion solely on his FDUTPA claim, so the likelihood of success element succeeds or fails only on that claim.

FDUTPA makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "FDUTPA authorizes a private cause of action for actual damages by any 'person' who has suffered a loss because of a defendant's violation of the statute." *State Farm Mut. Auto. Ins. Co. v. Feijoo*, No. 1:18-cv-23329-KMM, 2019 U.S. Dist. LEXIS 93343, at *13 (S.D. Fla. June 3, 2019) (quoting Fla. Stat. § 501.211(2)). The elements comprising a claim for damages under FDUTPA are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. GM Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). Under FDUTPA, "a deceptive practice is one that is 'likely to mislead consumers.'" *Adelson v. U.S. Legal Support, Inc.*, 715 F. Supp. 2d 1265, 1281 (S.D. Fla. 2010) (quoting *Davis v. Powertel*, 776 So. 2d 971, 974 (Fla. 4th DCA 2000)). An unfair practice has been defined as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (quotation omitted).

Plaintiff argues that when he applied to and chose to attend Defendant's medical school, Defendant did not require students to take the pretest, "much less pass . . . with a score far exceeding the national passing standard that [Defendant] increases seemingly randomly and at will." (Doc. 3 at 8). Plaintiff argues that Defendant's failure to disclose this requirement and its changing of the passing score constitute an unfair trade practice by Defendant that has caused an injury to Plaintiff. And, but for this practice, Plaintiff argues that he would have chosen to attend

a different medical school. Thus, Plaintiff asserts, there is a substantial likelihood that he will succeed on the merits of his FDUTPA claim.

Plaintiff's argument suffers from a fatal flaw—Defendant *did* disclose an approval process that encompasses the alleged testing requirement. In Defendant's 2015 "Clinical Medicine Handbook" ("2015 Handbook," Doc. 1-2), the handbook for the year Plaintiff matriculated at Defendant's school, Defendant states:

> Students become eligible to take the USMLE Step 2 . . . examinations upon successful completion of [clerkships and rotations]. *The approval of the Associate Dean of Clinical Medicine . . . is required before a student can be certified to sit for these exams. There are no exceptions to this rule. In order to be certified to sit for either USMLE Step 2 [exams], the student may be required to take additional step(s) to demonstrate comprehensive proficiency in the clinical sciences.*

(*Id.* at 5 (emphasis added)). Based on this language, Defendant made clear to Plaintiff that approval of Defendant's associate dean is required for a student to sit for the USMLE Step 2 Exam—and that Defendant can condition that approval on "additional step(s) to demonstrate comprehensive proficiency in the clinical sciences." (*Id.*). The pretest, and the score that Defendant requires on that pretest, appears to simply be an "additional step[]" that Defendant has imposed prior to approving students to sit for the USMLE Step 2 Exam.

Alternatively, Plaintiff argues that Defendant's practice of requiring this exam and changing the score on it—even if disclosed in the 2015 Handbook—is still an unfair trade practice. Under Florida law, a private university "may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college." *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (quoting *Univ. of Miami v. Militana*, 184 So. 2d 701, 704 (Fla. 3d DCA 1966)). "These terms may be derived from university publications such as the student handbook and catalog." *Id.* (quoting *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008)). "A court will not interfere with a private

university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." *Id.* (quoting *Jallali*, 992 So. 2d at 343).

Plaintiff argues that Defendant changing its requirements for Plaintiff to take the USMLE Step 2 Exam was arbitrary and capricious because those requirements were not consistent with the standards of other medical schools or medical licensing entities. As it applies to the present context, "[a]s long as the actions of the University have a rational basis, founded on reason and fact, and are not shown to be the product of bias or prejudice, they cannot be considered to be arbitrary or capricious. Such decisions by a University generally are accorded great deference." *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1258 (S.D. Fla. 2006) (citing *Jarzynka v. St. Thomas Univ. Sch. of Law*, 310 F. Supp. 2d 1256, 1268–69 (S.D. Fla. 2004)).

Defendant explains that the purpose of the pretest and the passing score set by Defendant

> is to protect the student's ability to obtain a residency, i.e., to successfully "match," following graduation from medical school. Students who fail any USMLE exam, or who pass but with only a low passing score, find it difficult if not impossible to obtain a residency. Accordingly, [Defendant] allows students to sit for an exam only when they have demonstrated that they have mastered the knowledge necessary to pass it successfully.

(Martin Decl., Doc. 18-1, at 3). Defendant's articulated purpose for the pretest, and the required score on it, appears to well-reasoned, and therefore, very likely not arbitrary. *Jallali*, 992 So. 2d at 344 (finding a change in private university requirements were not arbitrary when "[t]he reasons for the change were to ensure competency to practice . . . medicine, . . . and to comply with a prerequisite of many residency programs"). Further, permitting Defendant flexibility in revising its requirements, as it deems necessary, "is consistent with the great deference that courts accord to private universities in setting degree requirements." *Id.* at 342 (noting that "[i]n order for society to be able to have complete confidence in the credentials dispensed by academic institutions . . .

the issuance of these credentials must be left to the sound judgment of professional educators" (citation omitted)).

For these reasons, Plaintiff has not met his burden of demonstrating a substantial likelihood of success on the merits for his FDUTPA claim. And failure to satisfy even one element for a preliminary injunction is fatal to issuance of the injunction. *Llovera*, 576 F. App'x at 896.

### IV. CONCLUSION

In accordance with the foregoing, as previously ordered and adjudged by the Court, Plaintiff's Motion for Temporary Restraining Order (Doc. 3), construed as a motion for preliminary injunction was denied. (Doc. 21).

**DONE** and **ORDERED** in Orlando, Florida on November 4, 2020.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record