## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ALEJANDRO ESTRADA,

     *Plaintiff*,

 vs.

                             Case No.: 6:20-cv-01763-CEM-EJK

ST. MATTHEW'S UNIVERSITY
SCHOOL OF MEDICINE,

     *Defendant*.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Alejandro Estrada hereby files his Response in Opposition to Defendant St. Matthew's University School of Medicine's Motion to Dismiss **[DE-27]** and states:

### Introduction and Legal Standard

Plaintiff Alejandro Estrada ("Alex") is a medical student at St. Matthew's University School of Medicine ("SMU" or the "University") – a for-profit medical school in the Cayman Islands. Alex has successfully and satisfactorily completed all of SMU's academic requirements and clinical training, having spent upwards of $300,000.00 on his education, with a singular purpose – to become a physician and provide medical care to people in need.

All that remains for Alex are standard licensing exams administered by third parties, outside of SMU; however, SMU is obstructing Alex from taking these necessary licensing exams in at least three ways:

First, SMU must certify that Alex is a current student at SMU for him to be issued a registration ticket for the USMLE Step 2 CK exam, which Defendant SMU refuses to do, despite the fact that there is no dispute – Alex is a current student at SMU.

Second, for exams that do not require any certification or other action from SMU for Alex to be able to register, Defendant SMU is threatening disciplinary action, up to and including expulsion, if Alex takes the exams without first getting permission from SMU to do so – permission that is withheld unless and until Alex completes a myriad of other newly-imposed "pretest requirements" with arbitrarily-set and ever-changing passing standards, and even then, SMU's "permission" is not guaranteed.  SMU also imposes similar *ad hoc* "pretest requirements" with regularly changing standards as a prerequisite to the aforementioned USMLE Step 2 CK (clinical knowledge) exam.

Third, where other medical schools have adapted their procedures to accommodate students advancing in their careers during this Covid-19 global pandemic, SMU has exploited the Covid-19 pandemic as a means to ***increase*** the burden on students seeking to satisfy another third-party certification and licensing exam requirement – the USMLE Step 2 CS (clinical skills) exam. The clinical skills exam is traditionally an in-person practical exam; however, administrations of the exam, which require multiple people to gather together and engage in direct physical contact, were cancelled due to the pandemic.  The ECFMG – an organization that must certify foreign medical students such as Alex to ultimately become licensed to practice medicine in the United States – has offered alternatives to the clinical skills exam requirement, including some which Alex has already satisfied.  One such alternative is for SMU to confirm Alex's clinical skills based on a review of his already-existing reports from his already-completed clinical rotations – but, again, SMU simply refuses to do so.

SMU is perpetually moving the finish line further and further back, and raising the bar to graduation ever higher, to make it impossible for students like Alex to ever complete their third-party licensing and exam requirements so that they may participate in the upcoming Residency

Match[1] – requirements that should have nothing to do with SMU.  Upon information and belief, SMU's purpose in all this is to manipulate its statistics related to first-time exam pass rates and to redirect funds for third-party exam pretest preparation and administrations to entities of its choosing – the full facts of which will be revealed in discovery.  The ultimate effect of SMU's actions, though, is presently quite clear – to prevent Alex and other similarly-situated students from moving on from SMU and into a medical residency program.

Plaintiff brought this action against Defendant SMU for breach of contract, for multiple consumer protection violations – both previously committed by SMU and ongoing – and for fraud. Defendant SMU did not answer Plaintiff's Complaint **[DE-1]**, but instead filed its Motion to Dismiss **[DE-27]**.  Defendant's Motion to Dismiss challenges the sufficiency of each and every count of Plaintiff's Complaint on a singular basis – "failure to state a claim." Mot. at 1.

The law applied to a motion to dismiss for failure to state a claim, however, is clear:  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also* Fed. R. Civ. P. 12(b)(6).

The Supreme Court, noting questions regarding the "no set of facts" test, further clarified that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twomblv*. 55 U.S. 544, 563 (2007).  The *Conley* Court then went on to "describe[] the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient

---

[1] *See* Compl. ¶¶ 62-77 for a detailed discussion of the once-a-year Residency Match program and its relation to the claims asserted by Plaintiff.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 55 U.S. at 570).

This is the governing standard, and all facts properly alleged in Plaintiff's Complaint must be presumed true for purposes of Defendant's Motion to Dismiss. *Id.* A motion to dismiss is designed merely to test the bare sufficiency of a plaintiff's complaint. Thus, the singular question presented to this Court is whether Plaintiff's Complaint states a claim upon which relief can be granted. For the reasons further discussed herein, it does on all counts. Defendant's Motion should, therefore, be denied and Defendant should be required to answer the Complaint.

<u>Argument</u>

I.      **Counts IV, VI, and VIII of Plaintiff's Complaint sufficiently state a valid claim against Defendant SMU for Breach of Contract.**

To state a claim for breach of contract, Plaintiff must allege: (1) a contract; (2) a breach of the contract; and (3) damages resulting from the breach of the contract. *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285 (M.D. Fla. 2018) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. Dist. Ct. App. 2006)).

Counts IV, VI, and VIII of Plaintiff's Complaint plainly state valid claims for breach of contract, alleging each of the foregoing elements in Plaintiff's Complaint at Paragraphs 113, 120, and 127 ("The [specifically identified document] is a valid and binding contract . . ."); 114, 121, and 128 ("Defendant breached material terms of the contract . . ."); and 115, 122, and 129 ("Defendant's breach of the contract caused damage to Plaintiff"), respectively.

There is no requirement that a plaintiff plead the requisite legal standard of proof in a breach of contract claim; however, as here, where well-settled law allows a private university such as Defendant SMU to unilaterally modify its student handbooks (which are considered contracts between school and student), *see* Mot. at 6 (citing *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929

(11th Cir. 2013)), ***so long as such modifications are not arbitrary and capricious***, *id.*, Plaintiff saw fit to specifically allege that Defendant's contract modifications were arbitrary and capricious. Compl. ¶¶ 114, 121, and 128 ("Defendant breached material terms of the contract when it unilaterally, arbitrarily, and capriciously changed the Requirements . . . .").

      Inconceivably, Defendant dedicates nearly two full pages of argument to the undisputed fact that the law allows a private university to modify its contracts, so long as the modifications are not arbitrary and capricious, Mot. at 6-7; only to then imply that SMU's modifications cannot be arbitrary and capricious if Plaintiff had "sufficient notice" of the arbitrary and capricious new requirements in advance of any specific deadline effected by the changes, Mot. at 7 and 10; and then asserts that Plaintiff's allegations that SMU's actions were "arbitrary and capricious" are "merely conclusory" and should, therefore, "be disregarded," Mot. at 7.

      After asking the Court to "disregard" the alleged arbitrary and capricious nature of Defendant SMU's modifications to the contracts, SMU then sets forth the proposition that it has the lawful authority to modify its requirements ***in any way it chooses*** based on vague and indefinite statements in the contract that "students had to be **approved** by SMU to take the USMLE Step 2 CK exam," that students "'may be required to take **additional step(s)**' to show their proficiency," that the University will determine the passing standard for the prerequisite exams at its "**sole discretion**," and that "students are required to achieve **satisfactory performance** on the [prerequisite exam]." Mot. at 9 (quoting Compl. Ex. 2 at 210 and Ex. 4 at 231-32) and 10 (quoting Compl. Ex. 5 at 138) (emphasis added).  None of the preceding emphasized terms were defined in the contract. *See generally* Compl. Exs. 2, 4, and 5.  SMU then imposed multiple additional exams as prerequisites to the one exam that mattered for licensure – the USMLE Step 2 CK – and established SMU's own "passing score" well in excess of national norms, that SMU then regularly

increased at will – modifications that Plaintiff asserts are plainly arbitrary and capricious.  Mot. at 9-10; Compl. ¶¶ 41-90.

The full extent of SMU's modifications to its exam requirements, and SMU's reasoning behind those modifications, will be revealed in discovery.  Whether the evidence demonstrates that SMU's contract changes were arbitrary and capricious should be decided by a jury.  SMU's claims of unlimited authority to impose the modifications challenged in Plaintiff's Complaint are more properly raised as affirmative defenses, and not on a motion to dismiss.  As to Counts IV, VI, and VIII of Plaintiff's Complaint, Plaintiff has validly stated causes of action for breach of contract, and Defendant's Motion to Dismiss should, therefore, be denied.

## II.   Counts V, VII, and IX of Plaintiff's Complaint sufficiently state a valid claim against Defendant SMU for Breach of the Covenant of Good Faith and Fair Dealing.

Florida law provides that "every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations."  *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (citing *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097 (Fla. Dist. Ct. App. 1999)).  The covenant exists to "ensure[] that neither party will do anything that will injure the right of the other party to receive the benefits of the contract."  *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999).

In Defendant's Motion to Dismiss, SMU argues, as its sole basis for dismissal, that Plaintiff can have no claim for breach of the covenant because SMU has unlimited authority to modify the contracts as it pleases, and impose whatever additional exam pretest requirements it pleases, at whatever passing standards it demands at any time, and withhold approval for students to take necessary third-party licensing exams at its sole and exclusive discretion.  Mot. at 9.  Vague contract terms that one party may exploit to deny other parties the intended benefits of the contract,

such as those relied upon by SMU in support of its foregoing assertions – specifically, that the University may "require[] additional step(s)," Mot. at 9 (citing Compl. Ex. 2 at 210), and that the University will determine passing standards "in its sole discretion," Mot. at 9 (citing Compl. ¶ 41 and Ex. 4 at 231-32) – are precisely the circumstances for which the covenant of good faith and fair dealing exists, and why it is included in every contract.

United States Supreme Court Justice Souter, while on the New Hampshire Supreme Court, described the purpose of the implied covenant in a way that is particularly relatable to SMU's conduct in modifying and performing the contracts with respect to its unilateral imposition of obstructionist exam pretest requirements designed to prevent Alex and other students from completing their third-party licensing exams, thereby depriving Alex of the benefits of the contract(s):

> [U]nder an agreement that appears by word or silence to **invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value**, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

*Cox*, 732 So.2d at 1097 (quoting *Centronics v. Genicom Corp.*, 562 A.2d 187, 193 (N.H.1989)) (emphasis added).

Indeed, the circumstances may be different if SMU, in its contracts, detailed the full extent of its intended pretest requirements, including that more requirements may be imposed at any time, with any notice or no notice at all, and that passing standards for satisfaction of the requirement may be changed by the University at will – but SMU has not done that. Rather, two possibilities exist that would entitle Plaintiff to relief for SMU's conduct with respect to the contract(s): either (1) SMU's change(s) to the contract were arbitrary and capricious, as discussed above, and therefore constitute a breach of the contract; or (2) SMU performed the otherwise potentially

lawfully-modified contract term(s) in a way that was arbitrary and capricious, and therefore in breach of the covenant of good faith and fair dealing.  Which of the two is most applicable to SMU's conduct with respect to each of the three contracts, and to this case as a whole, will be determined through discovery; however, at this early stage, both must be asserted to define the permissible scope of that discovery and for Plaintiff to ultimately recover the relief to which he is entitled – which may include recovery for a breach of an express contract term, as to any one or more of the three contracts at issue; recovery for a breach of the implied covenant, as to any one or more of the three contracts at issue; or a combination of both claims as to some or all of the contracts.

Thus, Counts V, VII, and IX of Plaintiff's Complaint plainly state valid claims for breach of the implied covenant of good faith and fair dealing in Plaintiff's well-pled allegations that: (1) "Plaintiff and Defendant are parties to a written contract . . . ," Compl. ¶¶ 116, 123, and 130, respectively; (2) "[t]he contract is ambiguous about the permissibility or scope of Defendant's conduct in [performing the contract with respect to third-party exams]," Compl. ¶¶ 117, 124, and 131, respectively; (3) "Defendant, through a conscious and deliberate act, fails or refuses to discharge contractual responsibilities, which unfairly frustrates the contract's purpose and disappoints Plaintiff's expectations," Compl. ¶¶ 118, 125, and 132, respectively; (4) "Defendant's breach of the implied covenant of good faith and fair dealing has deprived Plaintiff of the benefits of the contract," Compl. ¶¶ 119, 126, and 133, respectively; and (5) that, "as a result of Defendant's breach, Plaintiff has been damaged," *id.  See also generally Cox*, 732 So.2d at 1097-98 (discussing various actions in the performance of a contract and a party's contractual expectations that constitute a breach of the implied covenant of good faith and fair dealing).

Accordingly, as to Counts V, VII, and IX of Plaintiff's Complaint, Defendant's Motion to Dismiss should be denied.

**III.    Count X of Plaintiff's Complaint sufficiently states a valid claim against Defendant SMU for Fraud.**

To state a claim for fraud, Plaintiff must allege: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation. *Wadlington v. Cont'l Med. Servs., Inc.*, 907 So.2d 631, 632 (Fla. Dist. Ct. App. 2005); *see also* Mot. at 12 (citing *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010)).

Count X of Plaintiff's Complaint plainly states a valid claim for fraud, alleging each of the foregoing elements in Plaintiff's Complaint as follows: (1) "Defendant made false statements of material fact in Defendant's misrepresentations of its testing and graduation requirements [in the contracts and other SMU publications]," Compl. ¶ 134; (2) "Defendant knew that the misrepresentations were false when made," Compl. ¶ 135; (3) "Defendant intended that the misrepresentations would induce another to act in reliance thereon," Compl. ¶ 136; and (4) "Plaintiff acted in reliance on Defendant's misrepresentations and, as a result, suffered damages," Compl. ¶ 137.

Additionally, Rule 9(b) requires that claims of fraud be alleged "with particularity."  Fed. R. Civ. P. 9(b); *see also* Mot. at 12.  Defendant argues, incorrectly, that the requirements of Rule 9(b) can "***ONLY***" be satisfied if the Complaint states "precisely what statements were made" ***AND*** "the time and place of each statement" ***AND*** "the content of such statements" ***AND*** how the statements "misled the plaintiff" ***AND*** "what the defendants obtained" from the fraud. Mot. at 12-13 (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1371 (11th Cir. 1997). ***However***, **Rule 9(b) was never intended to "abrogate the concept of notice pleading."** *Durham v.*

*Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988), *cert. denied*, 469 U.S. 1211 (1985) (emphasis added).

Defendant has ample notice of the specific bases for Plaintiff's claims of fraud, as Plaintiff's pleading alleges SMU's fraud with sufficient particularity. *See, e.g.*, Compl. ¶¶ 82 (describing one example of SMU's fraud, including the effect it has on others, and then quoting the exact text of the fraudulent statement, and attaching the original document in its entirety as an exhibit), 83 (describing SMU's omission of specific exam requirements – the NBME exams – in its discussion of "required licensing exams" on SMU's website), 84-86 (describing the benefits obtained by SMU as a result of the fraud), and 87-90 (describing the harm SMU's fraud has cause and continues to cause Plaintiff); *see also, e.g.*, Compl. ¶¶ 12-18 (discussing SMU's fraudulent misrepresentations with respect to the Student Handbook and how Alex would have attended a different medical school if, at that time, SMU's disclosures had been truthful and complete).

Thus, as to Count X of Plaintiff's Complaint, Defendant's Motion to Dismiss should be denied.

## IV.   Count III of Plaintiff's Complaint sufficiently states a valid claim against Defendant SMU for violating Florida's Deceptive and Unfair Trade Practices Act.

"The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides for a civil cause of action for '[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (quoting Fla. Stat.§ 501.204(1) and *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So.2d 992, 993 (Fla. Dist. Ct. App. 2004). A Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim, Plaintiff must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Id.* (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006)). All of the foregoing, and more, was sufficiently pled

in Count III of Plaintiff's Complaint at ¶¶ 105-110 (and other allegations incorporated by reference).

Defendant raises a brazen and plainly false claim that necessary allegations missing from Plaintiff's Complaint – specifically, that Plaintiff "has not alleged any unfair or deceptive trade practice."  Mot. at 14; *but see* Compl. ¶ 108 (explicitly referencing Compl. ¶¶ 9-90 as detailing SMU's "acts and practices [that] are unconscionable, unfair, and/or deceptive").  By way of example, Paragraphs 31-39 detail the exam requirements for Plaintiff upon entering the University, and Paragraphs 40-61, 68-69, and 73-77 describe how SMU has changed the requirements, and how those changes have unfairly interfered with Plaintiff's ability to further his medical training and career.  *See also* Compl. ¶¶ 82-83 (detailing how SMU uses its website to publish false information about licensing exam requirements to prospective and current students).  Defendant further concedes that Plaintiff "alleges that the 'Official Catalogue' is used to misinform and deceive prospective students" only to then falsely claim that Plaintiff does so "[i]n a conclusory fashion."  Mot. at 15; *but see* Compl. ¶¶ 18, 47 and 81 (detailing how SMU's "Official Catalogue" is full of misinformation, half-truths, and other acts of deception targeted at prospective students).

Similarly, Defendant argues, again, that the contract allows Defendant SMU to impose unlimited pretest requirements at whatever passing standard it chooses, and to alter all of requirements and standards at will.  Mot. at 14-15.  Again, whether SMU can modify and perform the contract in such a manner is subject to an arbitrary and capricious standard of review and should more properly be asserted as an affirmative defense.  For the reasons already discussed herein, it is not a valid basis for dismissal.  Additionally, a consumer protection claim such as FDUTPA is entirely distinct from claims founded in contract.  Thus, as to Count III of Plaintiff's Complaint, Defendant's Motion to Dismiss should be denied.

## V.   Count I of Plaintiff's Complaint sufficiently states a valid claim against Defendant SMU for a Declaratory Judgment.

To state a claim for declaratory judgment, Plaintiff must only allege the existence of an

"'actual controversy' between the parties." *Laboss Transportation Servs., Inc. v. Glob. Liberty Ins. Co. of New York*, 188 F. Supp. 3d 1320, 1331 (S.D. Fla. 2016) (quoting *Sprint Sols., Inc. v. 4 U Cell, LLC*, No. 2:15-cv-605-FTM-38CM, 2016 WL 1244528, at *2 (M.D. Fla. Mar. 30, 2016).

"[A]n 'actual controversy' exists where 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Laboss*, 188 F. Supp. 3d at 1331 (citing *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1302 (M.D. Fla. 2015) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941))).

Plaintiff alleged all of that and more, including, *inter alia*, that (1) "[t]here is a bona fide, actual, present practical need for the declaration," Compl. ¶ 95; (2) "[t]he declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts," Compl. ¶ 96; (3) [s]ome power, privilege, or right of Plaintiff, and duty or liability of Defendant, is dependent upon the facts or the law applicable to the facts," Compl. ¶ 97; (4) Defendant has an actual, present, adverse, or antagonistic interest in the subject matter, either in fact or law," Compl. ¶ 98; (5) [t]he antagonistic and adverse interests are all before the Court by proper process," Compl. ¶ 99; and (6) that "[t]he relief sought is not merely giving of legal advice by the Court or the answer to questions propounded from curiosity," Compl. ¶ 100.

Though not specifically required by any statute, rule, or other legal authority, Plaintiff also included a detailed statement of the precise declarations sought, *see* Compl. ¶ 94.  Defendant now seeks dismissal on the basis that those statements, which are not expressly required for Plaintiff to have validly stated a claim for declaratory judgment, render the declaratory relief sought by

Plaintiff duplicative of his claims for breach of contract, FDUTPA violations, and fraud.  Mot. at 15.

Defendant brazenly asserts that all of the declarations sought by Defendant are duplicative of other allegations, ***which they are not***.  *See, e.g.*, Compl. ¶ 94(ix)-(xiv) (seeking a declaration that there is a special relationship between student and school that imposes certain obligations and expectations between them, and then detailing some of those specific obligations that SMU has failed to fulfill).  Contrary to Defendant's claims and argument presented to this Court in its Motion to Dismiss, these allegations for declaratory judgment do not appear elsewhere in Plaintiff's Complaint.  Additionally, Rule 57 of the Federal Rules of Civil Procedure, which governs declaratory judgment actions, provides that "[t]he existence of another adequate remedy **does not preclude a declaratory judgment** that is otherwise appropriate."  (Emphasis added.)

Defendant further fails to consider the relationship between the legal and equitable claims raised in Plaintiff's Complaint, the procedural rules that govern those claims, and what relief is actually required for Plaintiff to **"secure full, adequate and complete relief."**  *See* Mot. at 15 (quoting *Fernando Grinberg Tr. Success Int. Properties LLC v. Scottsdale Ins. Co.*, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010) (emphasis added).  Plaintiff's circumstances are unique, particularly considering the close temporal proximity to the upcoming 2021 Residency Match and the parties' obligations in connection therewith.  Rule 57 of the Federal Rules of Civil Procedure expressly provides that "[t]he court may order a speedy hearing of a declaratory-judgment action," which will likely be necessary for Plaintiff to have certain facts determined by the Court to then position Plaintiff to seek preliminary injunctive relief.[2]  Not all of Plaintiff's projected damages

---

[2] Notably, Plaintiff's claim for Injunctive Relief (Count II of Plaintiff's Complaint) specifically references the declarations sought in Paragraph 94 of Plaintiff's Claim for Declaratory Relief

can be satisfied with monetary payment.  The declaratory judgments sought by Plaintiff, which may be rendered on an expedited basis as provided for by the applicable Rule, are necessary for Plaintiff to "secure full, adequate and complete relief."  *Fernando Grinberg*, 2010 WL 2510662, at *1.  Thus, they must be separately raised in Plaintiff's Complaint, as specifically allowed by Rule 57.  *See* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").

As to Count I of Plaintiff's Complaint, Defendant's Motion to Dismiss should be denied.

## VI. Count II of Plaintiff's Complaint sufficiently states a valid claim against Defendant SMU for Injunctive Relief.

Defendant offers only a one-sentence, conclusory argument in support of its Motion to Dismiss Plaintiff's claim for Injunctive Relief – that the Complaint "fails to state a claim" because Plaintiff (1) "does not set forth any legal basis for the claim," and (2) does not "allege that he lacks an adequate remedy at law."  Again, Defendant's contentions are simply false.

First, Plaintiff plainly states a legal basis for his claim for injunctive relief.  *See* Compl. ¶¶ 94 (asking the Court to determine that specific acts of Defendant SMU are violating the rights of Plaintiff) and 101-04 (balancing the equities between the parties and asking the Court to enjoin Defendant SMU from continuing to engage in the offending conduct).  Additionally, Plaintiff's Complaint specifically alleges that "Plaintiff will suffer ***irreparable harm*** ***unless an injunction is issued***" – in other words, that there is no remedy at law sufficient to protect Plaintiff and, thus, injunctive relief is necessary. Compl. ¶ 102 (emphasis added).  It is axiomatic that if a harm could be compensated by the payment of money damages (an "adequate remedy at law"), such harm is not "irreparable" absent the issuance of an injunction.  *See id.*  Furthermore, the determination of

---

(Count I of Plaintiff's Complaint), as the two are directly related in substance, yet wholly distinct in the relief they would provide Plaintiff.  *See* Compl. ¶ 102.

whether there exists an "adequate remedy at law" is a legal question, not an allegation of fact that Plaintiff must plead affirmatively so that Defendant may answer the charge.

Plaintiff has stated a valid claim for Injunctive Relief in Count II of Plaintiff's Complaint. Defendant's Motion to Dismiss should, therefore, be denied.

**VII.   Plaintiff's claims should *NOT* be dismissed with prejudice.**

At bottom, Defendant requests that this Court dismiss all of Plaintiff's claims "with prejudice." Mot. at 16. Even if the arguments raised by SMU Defendant were viable, which they are not, SMU offers no legal authority or other argument to support such an extreme request. *See* Mot. at 16. At a minimum, if the Court finds that any of Plaintiff's claims do not sufficiently allege an essential element, require additional specificity in pleading for Defendant to be able to adequately answer, or are otherwise deficient in some manner, justice requires that Plaintiff be afforded the opportunity to amend his pleading to cure the defect. *See, e.g.*, *Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172 (5th Cir. 1977) ("Dismissal of a complaint with prejudice is such a drastic remedy that a district court should apply it only in extreme circumstances.") (citing *Bon Air Hotel, Inc. v. Time, Inc.*, 376 F.2d 118, 121 (5th Cir. 1967), and *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976)).

## Conclusion

For the reasons discussed herein, Defendant's Motion to Dismiss should be denied outright, and Defendant SMU should be required to answer Plaintiff's Complaint.

WHEREFORE, Plaintiff Alejandro Estrada respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss, require that Defendant St. Matthew's University School of

Medicine answer Plaintiff's Complaint in accordance with the Federal Rules of Civil Procedure, and grant any such other and further relief as is just and proper.

Respectfully submitted,

Dated:  November 25, 2020

**MAGER PARÚAS, LLC**
2719 Hollywood Boulevard
Hollywood, Florida 33020
Phone: 954-763-2800
Email:  service@mpjustice.com

*/s/  Brandon G. Little*

Scott A. Mager, Esq. (FBN: 768502)
Brandon G. Little, Esq. (FBN: 122212)

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the above date, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system, which will email a Notice of Electronic Filing and serve a copy of the foregoing document to:

Dale A. Evans, Jr., Esq.
LOCKE LORD LLP
777 South Flagler Drive
East Tower, Suite 215
West Palm Beach, FL 33401
dale.evans@lockelord.com
tina.sullivan@lockelord.com
autodocket@lockelord.com
*Attorneys for Defendant*

*/s/  Brandon G. Little*

Brandon G. Little, Esq.