UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDAs
ORLANDO DIVISION

**ALEJANDRO ESTRADA,**

**Plaintiff,**

**v.**                                                      **Case No. 6:20-cv-1763-CEM-EJK**

**ST. MATTHEW'S UNIVERSITY
SCHOOL OF MEDICINE,**

**Defendant.**
_____/

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion to Dismiss ("Motion," Doc. 27), Plaintiff's Response (Doc. 33), and Defendant's Reply (Doc. 39). For the reasons stated herein, the Motion will be granted in part and denied in part.

## I. BACKGROUND

In August 2015, Plaintiff Alejandro Estrada enrolled as a medical student at Defendant St. Matthew's University School of Medicine ("SMU"), which is in the Cayman Islands. (Compl., Doc. 1 ¶ 33). Once Plaintiff approached graduation, he

sought to participate in the 2021 National Resident Matching Program ("Match").[1] (*Id*. ¶¶ 31, 32, 35, 62).

To participate in Match, graduates of foreign medical schools must: (1) pass the United States Medical Licensing Examination's ("USMLE") Step 1 and Step 2 Clinical Knowledge Exam, (2) submit an attestation of the individual's clinical skills from clinical rotations, and (3) obtain a diploma of medical education from a registered medical school. (*Id.* ¶¶ 20, 23–28, 68–69).

The USMLE Step 2 Clinical Knowledge Exam is generally comprised of two separate exams—a clinical knowledge exam ("Step 2 CK Exam") and a clinical skills exam ("Step 2 CS Exam"). (*Id.* ¶ 24(2)). But in response to the COVID-19 pandemic, USMLE Step 2 CS test administrations were suspended, and alternatives were offered so that students could participate in the 2021 Match. (*Id.* ¶ 25). The USMLE Step 2 CS alternatives require Plaintiff to take the Occupational English Test ("OET") and have SMU submit a form to Educational Commission for Foreign Medical Graduates ("ECFMG") attesting to his clinical skills (the "Clinical Skills Attestation Form"). (*Id.* ¶ 26).

At the time of Plaintiff's matriculation at SMU in 2015, the Clinical Medicine Handbook ("2015 Handbook," Doc. 1-1) provided, in relevant part:

---

[1] Match is an algorithm-based system used to place medical students into residency training programs at United States teaching hospitals. (Doc. 1 ¶ 62).

> Students become eligible to take the [Step 2 CK Exam] . . . upon successful completion of the 5 core clerkships or 40 weeks of rotations and must comprise 4 core clerkships including Internal Medicine and Surgery, as well as a 4 week Primary rotation. The approval of the Associate Dean of Clinical Medicine and the successful completion of the clerkships is required before a student can be certified to sit for [this] exam[]. There are no exceptions to this rule. In order to be certified to sit for . . . [the Step 2 CK Exam], the student may be required to take additional step(s) to demonstrate comprehensive proficiency in the clinical sciences.

(*Id.* at 21).

Between 2015 and 2019, Plaintiff allegedly performed, or was on track to perform, all requirements of the SMU medical school curriculum to participate in the 2021 Match. (Doc. 1 ¶¶ 32–35). "All that remains for [Plaintiff] to participate in the 2021 Match is the [Step 2 CK Exam], the [OET], . . . [SMU's] submission of the Clinical Skills Attestation Form to the ECFMG (for which [Plaintiff's] patient encounters from his previous clinical rotations are sufficient), and graduation from SMU." (*Id.* ¶ 36).

On or about September 5, 2019—just as Plaintiff was concluding his graduation requirements—SMU modified the 2015 Handbook, adding a requirement that all students take the National Board of Medical Examiners ("NBME") Comprehensive Clinical Sciences Examination ("CCSE") before sitting for the Step 2 CK Exam. ("2019 Handbook," Doc. 1-4, at 231).

The 2019 Handbook states, in pertinent part, that:

> All students are required to take [the CCSE] to ascertain whether or not his/her preparation for the [Step 2 CK Exam] has been successful. The passing standard for [the] CCSE will be determined at the sole discretion of [SMU]. Based upon the results of the CCSE, the student will take the [Step 2 CK Exam] or participate in university-approved remediation.

(*Id.* at 231–32; *see also* Doc. 1 ¶ 41). On June 8, 2020, SMU announced that all students would also be required to take and pass the NBME's Comprehensive Clinical Science Self-Assessment ("CCSSA") before taking the Step 2 CK Exam. ("June 2020 Announcement," Doc. 1-6, at 1).

Plaintiff alleges that for purposes of state licensure, the NMBE determines what constitutes a passing score on the NMBE exams. (Doc. 1 ¶ 21). For the CCSE, the NBME requires a passing score of a 209. (Doc. 1 ¶ 49). However, in the June 8, 2020 Announcement, SMU announced that all students would be required pass the CCSE with a score of at least 220.[2] (Doc. 1-6, at 1).

Then, on or about June 19, 2020, SMU released a revised version of the Handbook, removing the provision stating that "[t]he passing standard for CCSE will be determined at the sole discretion of the university." ("2020 Handbook," Doc. 1-5, at 138). In or about August 2020, Plaintiff took the CCSE and received a score

---

[2] Plaintiff does not allege that SMU's passing score for the CCSSA was higher than the passing score set by the NBME.

of 212, which was below SMU's required score of 220. (Doc. 1 ¶ 50). On or about August 31, 2020, SMU announced that it was increasing the passing CCSE score from 220 to 222 for any student who had not yet been approved to take the Step 2 CK Exam. (Aug. 2020 Announcement, Doc. 1-7, at 1).

The following month, SMU also notified students that prior to taking the OET, they must first complete SMU's pre-test preparation course. (Doc. 1 ¶ 55–56). Around this time, SMU allegedly coerced students to sign statements agreeing to not take the OET for the first time until certified to do so by SMU. (Doc. 1 ¶¶ 56–57). Plaintiff alleges that he registered to take the OET before the implementation of SMU's new requirements but now risks being dismissed from SMU if he takes the test without SMU's approval. (*Id.* at ¶¶ 58–59).

According to Plaintiff, SMU is perpetually changing its graduation requirements and exam prerequisites, making it difficult for him to graduate and complete the licensing requirements necessary for the 2021 Match. (*Id.* ¶¶ 3, 90). On September 25, 2020, he brought this suit, asserting claims for declaratory judgment; injunctive relief; violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); breach of contract; breach of the implied covenant of good faith and fair dealing; and fraud. (*Id.* at 93–137).[3] SMU moves to dismiss the Complaint for

_____

[3] Plaintiff also moved for a preliminary injunction "compelling [SMU] to immediately certify [Plaintiff] to take the [Step 2 CK Exam]" due to the then-impending deadline for 2021

failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally* Doc. 27).

## II.   LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

Match applications. (Mot. for TRO, Doc. 3, at 1, 12). The Court denied that motion. (Oct. 5, 2020 Endorsed Order, Doc. 21; Nov. 4, 2020 Order, Doc. 28, at 6).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Ordinarily, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### III. ANALYSIS

#### A. Breach of Contract

In Counts IV, VI, and VIII, Plaintiff asserts claims against SMU for breach of contract. (Doc. 1 ¶¶ 113–115, 120–122, 127–129). In Florida, courts recognize that colleges and universities have a legal relationship with their students that is "contractual in nature." *Jallali v. Nova Se. Univ., Inc.*, 992 So.2d 338, 342 (Fla. 4th DCA 2008) (quoting *John B. Stetson Univ. v. Hunt*, 102 So. 637, 640 (Fla. 1924)). "[T]he terms of that contractual relationship may be derived from university publications such as the student handbook and catalog." *Id.*

Such publications are not express contracts; rather, they are contracts "implied-in-fact." *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1339 (S.D. Fla. 2020) (citing *Jarzynka v. St. Thomas Univ. Sch. of Law*, 310 F. Supp. 2d 1256, 1269 (S.D. Fla. 2004)). Under these implied-in-fact contracts, private universities "may set forth terms under which it will admit and subsequently graduate students who will subject themselves to the rules, regulations and regimen of the college.'" *Jallali*,

992 So.2d at 342 (quoting *Univ. of Miami v. Militana*, 184 So.2d 701, 704 (Fla. 3d DCA 1966)).

"A court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (per curiam) (citing *Jallali*, 992 So. 2d at 343). If the "the actions of the [u]niversity have a rational basis, founded on reason and fact, and are not shown to be the product of bias or prejudice, they cannot be considered to be arbitrary or capricious." *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1258 (S.D. Fla. 2006) (citing *Jarzynka*, 310 F. Supp. 2d at 1268–69)).

Plaintiff alleges that the 2015, 2019, and 2020 Handbooks are contracts and that SMU breached each of them. (Doc. 1 ¶¶ 114–115, 121–122, 128–129). Plaintiff appears to allege that SMU breached the Handbooks by "arbitrarily and capriciously": (1) modifying the Handbooks to require that all students pass the CCSE and CCSSA prior to sitting for the Step 2 CK Exam ("Pretest Requirements"); (2) imposing passing scores for the CCSE Exam that are "well in excess of the national passing standards" set by the NBME ("Score Requirements"); and (3) refusing to allow Plaintiff to take the Step 2 CK Exam. (*See* Doc. 1 at 1; *see also id.* ¶¶ 20–21, 49, 114, 121, 128).

SMU argues that Plaintiff fails to allege a breach with respect to its implementation of the Pretest Requirements because "[SMU] had the inherent right to modify its educational requirements" and Plaintiff does not "to raise a plausible allegation that SMU's modifications to its Handbook were made in bad faith or [were] arbitrary and capricious." (Doc. 27 at 7). SMU also argues that "[Plaintiff]'s own allegations show that SMU's pre-testing retirements were rational and served a legitimate purpose; they were adopted to ensure that SMU students were prepared to take and would likely pass the . . .  Step 2 CK Exam, which is critical to students' match opportunities." (*Id.*) The Court disagrees.

While Plaintiff alleges facts to suggests that the CCSE and CCSSA can help students assess their ability to pass the Step 2 CK Exam,[4] he does not allege that SMU implemented its Pretest Requirements for that purpose. Rather, Plaintiff avers that SMU implemented the Pretest Requirements to "manipulate its student test scores to attract more prospective students" to SMU and to "enrich [SMU] and its affiliates." (Doc. 1 ¶¶ 90, 137(iii)). Construing the allegations of the Complaint in the light most favorable to Plaintiff and taking his allegations as true, Plaintiff has adequately pleaded that SMU acted arbitrarily and capriciously.

---

[4] (*See e.g.*, Doc. 1 ¶ 48 (explaining that the CCSE and the Step 2 CK Exam "cover very similar content, and a student who passes the [CCSE] will likely also pass the Step 2 CK Exam); *see also* Doc. 1-1 at 1 (noting that the CCSSA "[h]elps students . . . evaluate their readiness to take the USMLE exams)).

As an alternate ground for dismissal, SMU argues that Plaintiff's contract claims fail because the plain language of the 2015 Handbook stated "that students had to be approved by SMU to take the . . . Step 2 CK [E]xam and that they 'may be required to take additional step(s)' to show their proficiency in basic sciences and readiness for the exam." (Doc. 27 at 7 (quoting Doc. 1-2 at 210)). The Court is unpersuaded.

Even where a university reserves the right to modify its requirements, case law suggests that the arbitrary and capricious standard applies. *See, e.g.*, *Jallali*, 992 So. 2d at 342–343 (Fla. 4th DCA 2008) (applying the standard where the school reserved the right to change its policy); *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1258–59 (S.D. Fla. 2006) (applying the standard where the student admitted, and the school properly determined the student violated the school's policies); *Jarzynka v. St. Thomas Univ. Sch. of Law.*, No. 03-20652-CIV, 2005 WL 8154066, at *1 (S.D. Fla. Aug. 24, 2005) (applying the standard where the school reserved the right to take disciplinary action without following procedures), *aff'd sub nom.* 210 F. App'x 895 (11th Cir. 2006). SMU cites no case law to the contrary. Thus, the Court rejects SMU's argument.

As noted *supra*, Plaintiff adequately pleaded that SMU acted arbitrarily and capriciously by implementing the Pretest Requirements, and therefore, SMU

breached the Handbooks. Thus, the Court will not dismiss his breach of contract claims.[5]

## B.    Implied Covenant of Good Faith and Fair Dealing

Counts V, VII, and IX allege that SMU breached the implied covenant of good faith and fair dealing by "arbitrarily, and capriciously changing the [r]equirements for testing and graduation." (*See* Doc. 1 ¶¶ 11, 124, 131).

As SMU points out, "[a] breach of the implied covenant of good faith and fair dealing is not an independent cause of action but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). Thus, "a claim for a breach of implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Id.* at 1152.

Here, Plaintiff does not identify any express term of a contract. (*See generally* Doc. 1). Rather, Plaintiff alleges that SMU changed its testing and graduation requires. Absent the breach of a specific contractual term, however, changes to an agreement, cannot form the basis of a claim for breach of the implied covenant of good faith and fair dealing. *See McKesson Corp. v. Benzer Pharmacy Holding LLC*,

---

[5] Having concluded that Plaintiff's breach of contract claims survive dismissal based on SMU's implementation of the Pretest Requirements the Court does not reach the issue of whether Plaintiff adequately pleads a breach of contract claim based on SMU's implementation of the Score Requirements.

No. 8:20-CV-2202-T-33JJS, 2020 WL 7054682, at *4 (M.D. Fla. Dec. 2, 2020) (dismissing a counterclaim for implied covenant of good faith and fair dealing based on changes made to an agreement because, *inter alia*, the defendant "fail[ed] to identify a specific contractual term in the agreement that ha[d] been breached"); *Smalls v. New Penn Fin., LLC*, No. 8:20-CV-2312-WFJ-JSS, 2021 WL 1530840, at *5 (M.D. Fla. Apr. 19, 2021) ("To state a claim for breach of this implied covenant, the breach of an express term of a written contract must be alleged."). Accordingly, Counts V, VII, and IX will be dismissed.

### C.   FDUTPA

In Count III, Plaintiff alleges that SMU engaged in unfair and deceptive acts and practices in violation of FDUTPA. (Doc. 1 ¶¶ 10–112). FDUTPA makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state a FDUTPA claim, a plaintiff "must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013).

An "unfair" trade practice is one that "offends established public policy" and that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001). A deceptive act is one that "is likely to mislead the consumer acting reasonably in

the circumstances, to the consumer's detriment." *Millennium Commc'ns &
Fulfillment, Inc. v. Off. of Att'y Gen., Dep't of Legal Affs., State of Fla.*, 761 So. 2d
1256, 1263 (Fla. 3rd DCA 2000) (citation and internal quotations omitted).

Plaintiff alleges that SMU violated FDUTPA by, *inter alia*, "unfairly" and
"deceptively" imposing the Pretest Requirements and Score Requirements. (Doc. 1
¶¶ 4, 51, 86, 90). SMU argues that Plaintiff's FDUTPA claim fails because "[he] has
not alleged any unfair or deceptive trade practice." (Doc. 27 at 14). The Court
disagrees.

Plaintiff alleges to SMU imposed the Pretest Requirements to "manipulate its
student test scores to attract more prospective students" to SMU and to "enrich itself
and its affiliates." (Doc. 1 ¶¶ 90, 137(iii)). Plaintiff also alleges that SMU unfairly
sets its passing score for the CCSE well above the passing score required by the
NBME. (Doc. 1 ¶¶ 49, 51). As a result, students like Plaintiff are prevented from
taking the Step 2 CK Exam, even if they meet or exceed the NBME's passing score
and can demonstrate adequate preparation for the exam. (Doc. 1 ¶¶ 48–51, 54).
Without the ability to take and pass the Step 2 Exam, students like Plaintiff cannot
participate in Match or graduate from SMU, which causes them to incur monetary
damages in the form of additional student expenses, lost income, and accruing
interest on student loans. (Doc. 1 ¶¶ 77, 90).

Accepting these allegations as true, Plaintiff has adequately alleged that SMU's actions were unfair—i.e., oppressive and substantially injurious to its students. Accordingly, Plaintiff has pleaded a viable FDUTPA claim, and the Court will not dismiss Count III.

### D.    Fraud

Count X alleges that SMU committed fraud by making false statements of material fact. (Doc. 1 ¶ 134). To state a claim for fraudulent misrepresentation, a plaintiff must allege: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead fraud with particularity. To do this, the plaintiff must allege: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, . . . (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, . . . (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)).

Here, Plaintiff alleges that SMU presents two bases for his fraud claim. First, Plaintiff first alleges SMU made false statements of fact in its Handbooks. (Doc. 1 ¶ 134). However, he fails to identify a single false statement that SMU made in the Handbook. (*See generally* Doc. 1). Thus, to the extent Plaintiffs' fraud claim rests on this basis, it fails.

Second, Plaintiff claims that SMU made false statements of fact in the Frequently Asked Questions ("FAQ") of its website because SMU does not mention the CCSE and CCSSA exams in the following FAQ:

> **What tests will I need to take to get licensed in the U.S.?**
>
> In order to be licensed and practice medicine in the United States, the Educational Commission for Foreign Medical Graduates (ECFMG) requires students to take and pass the United States Medical Licensing Examination (USMLE). St. Matthew's University students and graduates are eligible to sit for these exams. The USMLE has three steps, two of which are taken by students while in medical school. Students must take and pass USMLE Step 1 prior to beginning the Clinical Sciences curriculum. USMLE Step 2 Clinical Skills (Step 2 CS) and Step 2 Clinical Knowledge (Step 2 CK) are taken prior to graduation. Step 3 of the USMLE, the final step for licensing, is taken after graduation, during, or at the conclusion of residency training.

(*Id.* ¶¶ 134, 82–83).

However, this does not constitute a false statement because neither the CCSE nor the CCSSA are required to obtain a license in the United States. (*Id.* ¶¶ 22–24, 30, 44–45). Rather, SMU requires all students to take the CCSE and CCSSA as

prerequisites to taking the Step 2 Exam. (Doc. 1 ¶¶ 40–42, 51). Accordingly, Plaintiff fails to state a claim for fraud on this basis as well. Count X will be dismissed.[6]

### E.    Declaratory Judgment

In Count I, Plaintiff seeks declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. (Doc. 1 ¶¶ 93–100). SMU argues that Plaintiff's claim for declaratory judgment should be dismissed because: (1) Plaintiff "has failed to state a claim for relief under substantive law;" and (2) the claim "is duplicative of [Plaintiff's] claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim;" and (Doc. 27 at 15). However, Plaintiff has stated viable claims for breach of contract and violation of FDUTPA. (*See* Parts III.A and III.C). Thus, SMU's first argument lacks merit. So does SMU's second argument.

The decision to entertain a declaratory claim is discretionary, thus in the Eleventh Circuit, district courts have ruled both ways in deciding whether to allow declaratory judgment claims to proceed where a plaintiff has also alleged a related

---

[6] To the extent that Plaintiff intended to allege an omission as the basis for his fraud claim, his claim still fails. Under Florida law, the non-disclosure of a material fact may only support a claim for fraudulent misrepresentations if the defendant has a duty to disclose. *TransPetrol, Ltd. v. Radulovic*, 764 So.2d 878, 879–880 (Fla. 4th DCA 2000). Such a duty arises when the defendant has information that the plaintiff has a right to know because of a fiduciary or other relation of confidence between them. *Id*. at 880. Plaintiff does not allege that SMU had a fiduciary or other relationship of trust or confidence with Plaintiff. In any event, Plaintiff does not allege with any particularity any omission that SMU made. Nor does he adequately allege how he relied on the purported omission to his detriment or what SMU obtained as a consequence.

breach of contract claim. *Kenneth F. Hackett & Associates, Inc. v. GE Capital Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1310 (S.D. Fla. 2010) (collecting cases). In determining if dismissal is appropriate, courts consider: (1) "the completeness of the relief afforded to a party when it prevails on its breach of contract claim" and (2) "judicial economy." *Id.* "Where victory on a declaratory judgment claim would not provide relief above and beyond the relief afforded by victory on the breach of contract claim, the declaratory judgment claim should be dismissed." *Hannon v. Delaware Am. Life Ins.*, No. 6:14-cv-301-Orl-40KRS, 2014 WL 12618716, at *3 (M.D. Fla. Oct. 2, 2014) (citation and internal quotations omitted).

Plaintiff's breach of contract claims seek redress for damages stemming from Defendant's alleged arbitrary implementation of the Score Requirements. (*See e.g.*, Doc. 1 ¶ 114). Plaintiff's claim for declaratory judgment seeks a laundry list of declarations, some of which will certainly be resolved by his breach of contract claim. (*See, e.g.*, *id.* ¶ 94(v) (seeking a declaration that "[SMU] unilaterally changed its requirements for graduation and licensure in an arbitrary and capricious manner not consistent with the standards of other medical schools or licensing entities")). But Plaintiff also seeks declarations that will not be resolved by his breach of contract claim. (*See, e.g.*, *id.* ¶ 94(x)–(xi) (seeking a declaration that SMU "violated its obligations to students, including Plaintiff, by impeding, obstructing, or otherwise preventing Plaintiff from taking . . . the Occupational English Test" and "by refusing

to attest to Plaintiff's clinical skills in satisfaction of the USMLE Step 2 CS alternative pathway by way of Plaintiff's clinical rotation patient encounters")). Thus, the Court cannot conclude that the Plaintiff will be able to secure full, adequate, and complete relief through his breach of contract claims.

Besides, "motions to dismiss made under Rule 12(b)(6) only test the validity of a claim, not its redundancy; a redundant claim should not be dismissed as long as it is valid." *See, e.g., Developers Sur. & Indem. Co. v. Archer W. Contractors, LLC*, No. 6:16-cv-875-Orl-40KRS, 2017 WL 6947785, at *4 (M.D. Fla. Apr. 17, 2017), *report and recommendation adopted by* No. 6:16-cv-1875-Orl-40KRS, 2017 WL 8314655 (M.D. Fla. May 2, 2017). What is more, Rule 57 permits declaratory actions even if another remedy exists. *Blitz v. Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1303 (M.D. Fla. 2015). SMU does not contest the validity of Plaintiff's claim for declaratory judgment; therefore, Count I will not be dismissed.

### F.    Injunctive Relief

Count II asserts a claim for injunctive relief. (Doc. 1 ¶¶ 101–104). Injunctive relief must be predicated upon a cause of action. *Klay v. United HealthGroup, Inc.*, 376 F.3d 1092, 1097–98 (11th Cir. 2004). Moreover, the availability of injunctive relief is based on a plaintiff's ability to articulate a basis for relief that would withstand scrutiny under a motion to dismiss for failure to state a claim. *Id.*

Here, Plaintiff seeks an injunction enjoining SMU from engaging in a slew of alleged prohibited actions. (*See* Doc. 1 ¶ 102). However, as SMU observes, Plaintiff fails to identify what claims he relies upon for injunctive relief. (*See id.* ¶¶ 101–104). Without knowing the legal basis for Plaintiff's claim for injunctive relief, the Court cannot properly assess whether injunctive relief is available. *See Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed – if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." (quotation omitted)).

Accordingly, the Court will dismiss Count II. However, this does not preclude Plaintiff from seeking injunctive relief as a remedy for his substantive claims, if appropriate.

### G.    Leave to Amend

Plaintiff requests leave to amend the Complaint to cure any defects. (*See* Doc. 33 at 15). SMU argues that the [C]omplaint should be dismissed with prejudice." (*See* Doc. 27 at 16). However, absent undue delay, bad faith, dilatory motive, undue prejudice, or futility of amendment, leave to amend should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2) (explaining that leave to amend should be granted liberally "when justice so requires"). Here, SMU

does not provide any adequate reason to deny Plaintiff's request to amend. Moreover, the Court cannot conclude that amendment is futile or will unduly prejudice SMU. Therefore, the Court will grant Plaintiff leave to amend.

## IV.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 27) is **GRANTED in part** and **DENIED in part**.

   a. Counts II, V, VII, IX, and X of the Complaint (Doc. 1) are **DISMISSED WITHOUT PREJUDICE.**

   b. In all other respects, Defendant's motion is **DENIED**.

2. **On or before October 1, 2021**, Plaintiff may file an Amended Complaint consistent with this Order. Failure to do so may result in dismissal of this action without further notice.

**DONE** and **ORDERED** in Orlando, Florida on September 1, 2021.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Records