## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ALEJANDRO ESTRADA,

      *Plaintiff,*

 vs.

ST. MATTHEW'S UNIVERSITY
SCHOOL OF MEDICINE,

      *Defendant*.

Case No.: 6:20-cv-01763-CEM-EJK

## AMENDED COMPLAINT

Plaintiff Alejandro Estrada hereby sues Defendant St. Matthew's University School of Medicine for monetary damages and injunctive relief, and alleges the following:

### Nature of the Case

1. Plaintiff Alejandro "Alex" Estrada is a medical student at Defendant St. Matthew's University School of Medicine, a Caribbean for-profit medical school from which graduates can become licensed to practice medicine in the United States.  In 2019, just as Alex was concluding his requirements for graduation from medical school, the University unilaterally modified its graduation requirements, imposing entirely new exam pre-test requirements not necessary for licensure.[1]  Thereafter, the University continued unilaterally modifying its requirements, arbitrarily imposing ever-increasing passing standards for the pre-test exams ***well in excess of the***

---

[1] The multiple organizations responsible for administering various exams and certifying medical students for licensure as practicing physicians, and the exams themselves, are a jumble of acronyms that have little to no meaning to non-medical students.  For the Court's convenience and ease of reference, a chart of the various organizations and exams discussed in this Complaint is attached hereto as **Exhibit 1**.

*national passing standards* set by the organizations administering the exams.

2.      Before the administering organization will issue a permit for a student to take the necessary licensing exam (the "USMLE Step 2 CK"), the University must "certify" that the student has completed the administering organization's prerequisites to take the exam; however, the Defendant University is refusing to certify students who have completed all of the administering organization's prerequisites, unless and until those students *also* complete the University's arbitrarily-imposed additional requirements. *Alex is one such student.*

3.      If the University continues to arbitrarily withhold certification – thereby refusing to confirm to the organization administering the USMLE Step 2 CK licensing exam that Alex is currently a medical student at SMU – Alex will be unable to take the mandatory licensing exam and will not have exam results in time to participate in the annual residency Match, which is the necessary next phase of Alex's medical education and career. If the University prevents him from entering the 2021 Match, his entire medical career will be delayed by at least one full year. Residency programs begin reviewing applications for the 2021 Match on October 21, 2020, at 9:00 a.m. *Time is of the essence.*

4.      Due to the exigencies created by deadlines in connection with the 2021 Match, immediate injunctive relief is necessary, and further injunctive relief will become necessary as additional deadlines approach. Additionally, because Defendant has unilaterally and arbitrarily altered its graduation and licensing exam requirements to unlawfully and unjustly enrich itself and its affiliates in a way that is unfair, deceptive, and exploitative of students, this action seeks equitable and monetary relief for Defendant's violations of consumer protection statutes, claims in contract, and claims in tort.

**Parties, Jurisdiction, and Venue**

5.      Plaintiff Alejandro Estrada, also known as Alex Estrada ("Alex"), is a natural person who is a citizen of Miami-Dade County, Florida.

6.      Defendant St. Matthew's University School of Medicine ("SMU" or the "University") is a foreign corporation established under the laws of the Cayman Islands, chartered as St. Matthew's University (Cayman) Ltd., also known as St. Matthew's University (Cayman) Ltd., Corp., and doing business as St. Matthew's School of Medicine, with its headquarters at Regatta Office Park, Leeward 3, Grand Cayman, Cayman Islands, British West Indies.  SMU is a for-profit university owned by R3 Education Inc., a Delaware corporation with its principal place of business in Devens, Connecticut.

7.      This is an action for damages exceeding $75,000.00, exclusive of interest, attorneys' fees, and costs, and there is complete diversity among the parties; therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 based on Plaintiff's assertion of a claim arising under 28 U.S.C. §§ 2201-2202.

8.      Defendant SMU has an administrative office in Orlando, Florida; therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**General Allegations**

**Application, Offer, and Acceptance:**

9.      Alex is a medical student at SMU, pursuing a "Doctor of Medicine" or "M.D." degree from the University.

10.     Alex applied to multiple medical schools, including SMU, between March and October 2014.

11.     Thereafter, Alex was offered admission to multiple medical schools, including

SMU.

12.     At the time Alex applied to, was offered admission to, and ultimately accepted admission at SMU, the University represented its USMLE Step 2 (as more specifically defined, *infra*) testing and graduation requirements (collectively, the "Requirements") as follows:

> 1. Students become eligible to take the USMLE Step 2 . . . examinations upon successful completion of the 5 core clerkships or 40 weeks of rotations and must comprise 4 core clerkships including Internal Medicine and Surgery, as well as a 4 week Primary Care rotation.  The approval of the Associate Dean of Clinical Medicine and the successful completion of the clerkships is required before a student can be certified to sit for these exams.  There are no exceptions to this rule. In order to be certified . . . the student may be required to take additional step(s) to demonstrate comprehensive proficiency in the clinical sciences.
>
> 2. Students are required to write and pass USMLE Step 2 . . . prior to graduation. . . .

*See* 2015 SMU Clinical Medicine Handbook (the "Student Handbook") at 210, the relevant portions of which are attached hereto as **Exhibit 2**.

13.     The Requirements were materially identical among all medical schools to which Alex was offered admission.

14.     Alex ultimately accepted SMU's offer of admission based, in substantial part, on the University's representation of its testing and graduation Requirements, with the understanding that any required "approvals" would not be unreasonably withheld.

15.     Had SMU's Requirements been, at the time of Alex's acceptance, materially different from, or more burdensome, onerous, and/or more expensive than the testing and graduation requirements of the other medical schools to which Alex was offered admission, he would have accepted an offer from one of the other schools and pursued his medical degree from a school other than SMU.

16.     Had Alex known, at the time of his acceptance, that SMU would unilaterally and

arbitrarily alter its Requirements to be materially different from, or more burdensome, onerous, and/or more expensive than the testing and graduation requirements of the other medical schools to which Alex was offered admission, he would have accepted an offer from one of the other schools and pursued his medical degree from a school other than SMU.

17.     The Student Handbook contains no provision in which SMU explicitly retained any right to modify the Student Handbook, or otherwise disclosed that the University may make material modifications to the Student Handbook or the Requirements.

18.     Additionally, the Student Handbook requires "[t]he approval of the Associate Dean of Clinical Medicine"; however, SMU's faculty directory does not identify any person with that title.  *See* SMU's Official Catalog 2019-2021 (SMU's "Official Catalog") at 24-30, a true and correct copy of which is attached hereto as **Exhibit 3**.

**The USMLE, the NBME, the ECFMG, and U.S. Medical Licensing Requirements:**

19.     Licensing for individuals to practice medicine in the United States is governed by each state.

20.     Most or all U.S. states accept a passing score from any one of multiple licensing exams, including, *inter alia*, the United States Medical Licensing Examination ("USMLE") or the National Board of Medical Examiners ("NBME") exams.

21.     For purposes of state licensure, what constitutes a "passing score" on the exam, including the USMLE and NBME exams, is determined by the administering organization, and not by each state.

22.     Students of foreign medical schools who seek licensure to practice medicine in the United States must be certified by the Educational Commission for Foreign Medical Graduates ("ECFMG") and must take and pass the USMLE exams.

23.     ECFMG certification requires that students pass USMLE Step 1, USMLE Step 2 CK, and USMLE Step 2 CS.

24.     The USMLE exams consist of the following parts:

(1)     USMLE Step 1 assesses whether medical school students or graduates understand and can apply important concepts of the basic sciences to the practice of medicine.  Step 1 is typically taken at the end of the second year of medical school.

(2)     USMLE Step 2 is designed to assess whether medical school students or graduates can apply medical knowledge, skills and understanding of clinical science essential for provision of patient care under supervision and includes emphasis on health promotion and disease prevention.  Medical students typically take Step 2 during the fourth year of medical school.  Step 2 is comprised of two separate exams – a clinical knowledge exam ("CK" or "Step 2 CK") and a clinical skills exam ("CS" or "Step 2 CS").

(3)     USMLE Step 3 is the final exam in the USMLE sequence and assesses whether medical school students or graduates can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine.  People typically take this exam at the end of the first year of residency.

25.     On or about May 26, 2020, in response to the COVID-19 pandemic, USMLE Step 2 CS test administrations were suspended, but alternatives have been offered so that students can still obtain ECFMG certification and participate in the 2021 Match (as defined herein, *infra*).

26.     The USMLE Step 2 CS alternatives require that Alex pass an English proficiency

test (the "Occupational English Test" or "OET") and that the University submit a form attesting to Alex's clinical skills (the "Clinical Skills Attestation Form").

27.     Alex can satisfy all USMLE Step 2 CS alternatives and, thus, is not required to take the Step 2 CS exam for ECFMG certification to participate in the 2021 Match.

28.     The Occupational English Test, now required by the ECFMG as part of the USMLE Step 2 CS alternatives, has no prerequisites and can be taken by any student at any time.

29.     Alex has completed all required clinical rotations, and his patient encounter reports from his clinical rotations satisfy the USMLE Step 2 CS alternative as sufficient attestation of his clinical skills.

30.     The ECFMG does not require any student to take NBME exams, including the NBME-CCSE (as further discussed herein, *infra*).

**The SMU Curriculum for the January 2015 Matriculating Class:**

31.     Alex began medical school at SMU in or about January 2015.

32.     Between 2015 and 2018, Alex took and passed all required academic courses at SMU.

33.     In or about April 2018, Alex took and passed the USMLE Step 1 exam, which was the final prerequisite for Alex to begin his clinical rotations.

34.     Between 2018 and 2020, Alex successfully completed all of his clinical rotations at medical facilities in Maryland, New York, Virginia, and Florida.

35.     Presently, Alex has fully and satisfactorily performed all requirements of the SMU medical school curriculum to participate in the 2021 residency Match program (as further discussed herein, infra), or is on track to perform all such requirements with ample time before the 2021 Match deadlines, *except for the USMLE Step 2 CK exam*.

36.     All that remains for Alex to participate in the 2021 Match is the USMLE Step 2 CK, the Occupational English Test, the University's submission of the Clinical Skills Attestation Form to the ECFMG (for which Alex's patient encounters from his previous clinical rotations are sufficient), and graduation from SMU.

37.     All of the foregoing are readily available to Alex, and he should have no difficulty completing all outstanding obligations prior to the Match deadlines (as further discussed herein, *infra*).

38.     Upon completing his clinical rotation, Alex immediately began preparing for the USMLE Step 2 CK.

39.     USMLE Step 2 CK scores are a critical component in medical student applications for the residency Match program.

**SMU's Unilateral, Arbitrary Changes to the Requirements:**

40.     On or about September 5, 2019, SMU released a revised version of the Clinical Medicine Handbook (the "Revised Handbook") and, ***for the first time***, added a new requirement that students take the NBME Comprehensive Clinical Sciences Examination (the "NBME-CCSE") ***before*** being allowed to sit for the USMLE Step 2 (the exam required for graduation and licensure). The relevant portions of the Revised Handbook are attached hereto as **Exhibit 4**.

41.     Specifically, in the Revised Handbook, SMU added the following:

**All students are required to take a Comprehensive Clinical Science Examination (CCSE) to ascertain whether or not his/her preparation for the USMLE Step2CK [sic] has been successful.** At present, the university utilizes the National Board of Medical Examiners (NBME) Comprehensive Clinical Sciences Examination as its CCSE. . . .

**The passing standard for CCSE will be determined at the sole discretion of the university.** Based upon the results of the CCSE, the student will take the USMLE Step 2CK [sic] examination or participate in university-approved remediation. . . .

Students are required to take [the] USMLE Step 2CK [sic] within 75 days of achieving satisfactory performance on the CCSE.

Students become eligible to take the USMLE Step 2 CK examination upon passing CCSE and upon successful completion of the 5 core clerkships or 40 weeks of rotations which must comprise 4 core clerkships including Internal Medicine and Surgery, as well as a 4 week Primary Care rotation.  University approval is also required before a student can be certified to sit for USMLE Step 2 CK.

Revised Handbook at 231-32 (emphasis added).

42.     Thereafter, on or about June 19, 2020, SMU released yet another revised version of the Clinical Medicine Handbook (the "Current Handbook"), *removing* the provision that "**[t]he passing standard for CCSE will be determined at the sole discretion of the university**," and otherwise modifying the Requirements as follows:

All students are required to take a Comprehensive Clinical Science Examination (CCSE) to ascertain whether or not his/her preparation for the USMLE Step2CK [sic] has been successful.  **Students are required to take USMLE Step 2CK [sic] within 75 days of achieving satisfactory performance on the CCSE.**

At present, the university utilizes the National Board of Medical Examiners® (NBME) Comprehensive Clinical Sciences Examination as its CCSE. . . .

Based upon the results of the CCSE, the student will take the USMLE Step 2CK [sic] examination or continue remediation . . . .

Students will bear the cost of th[e remediation] program. . . .

**Students are required to take USMLE Step 2CK [sic] within 75 days of achieving satisfactory performance on the CCSE.**

Current Handbook at 138 (emphasis added).  The relevant portions of the Current Handbook are attached hereto as **Exhibit 5**.

43.     Students who have graduated from medical schools outside the United States and Canada must pass all three steps of the USMLE to be licensed to practice in the United States.

44.     The NBME-CCSE is not a USMLE prerequisite to taking the Step 2 exams.

45.     The NBME-CCSE is not a requirement of the ECFMG for certification of foreign

medical graduates.

46.    The NBME-CCSE is not a requirement of any state for licensure to practice medicine.

47.    Additionally, even now, SMU's Official Catalog makes ***no mention*** of the NBME-CCSE as a prerequisite to graduation or for the USMLE licensing exams, affirmatively representing the complete requirements for "Graduation, ECFMG Certification, and Licensure" as follows:

**Graduation Requirements**
Students must successfully complete:
• All Basic Sciences courses, with passing grades for each course
• 42 weeks of third year core clinical rotations, with passing grades for each rotation
• National Board of Medical Examiners (NBME) Core Clerkship examinations[2]
• All clinical rotation patient log books
• 30 weeks of fourth year elective rotations, with passing grades for each rotation
• SMU must receive a satisfactory evaluation from each preceptor for credit of a rotation to be awarded
• Passing scores on the United States Medical Licensing Exam (USMLE) Step 1, Step 2 Clinical Knowledge and Step 2 Clinical Skills
• Intent to Graduate Form
• Graduation Fee of U.S. $500
• Clear balance with Student Accounts
• Pre-Graduation Questionnaire

. . .

**Licensure**
. . . All students are required to sit for and pass Step 1, Step 2 Clinical Knowledge and Step 2 Clinical Skills United States Medical Licensing Exams (USMLE), regardless of whether they intend to practice in the United States. . . .

Official Catalog **[Exhibit 3]** at 32-33.

48.    The NBME-CCSE and the USMLE Step 2 CK cover very similar content, and a student who passes the NBME-CCSE will likely also pass the USMLE Step 2 CK.

---

2 The NBME-CCSE is not a "Core Clerkship examination."

49.     At all material times, the NBME determined that a passing score on the NBME-CCSE is 209 (the "NBME Standard").

50.     In or about August 2020, Alex took the NBME-CCSE and passed with a score of 212, which is above the NBME Standard.

51.     However, just two months prior, SMU announced that it would require a NBME-CCSE score of at least 220 (the "SMU Standard"), and then further require yet another unnecessary NBME exam – the CCSSA – before _**considering**_ to allow a student to take the USMLE Step 2 CK (SMU's "First Announcement"):

> Step 2 CK Certification Process
>
> Students are required to pass the NBME CCSE as defined by the university. Currently, the passing score for the NBME CCSE is 220. . . .
>
> After passing the NBME CCSE, students are required to pass the NBME CCSSA as defined by the university. Currently, the passing score for the NBME CCSSA is 250 or higher. The school's certification committee will determine the appropriate NBME CCSSA version (7,8, or 6) that a student will take. . . .
>
> . . . After successfully passing the NBME CCSE and NBME CCSSA, a portfolio containing Basic Science exam scores and GPA, Step 1 score(s) and Clinical Science exam scores will be forwarded to the school's certification committee for consideration of Step 2 CK certification.

_See_ SMU's First Announcement, a true and correct copy of which is attached hereto as **Exhibit 6**.

52.     Then, on or about August 31, 2020, SMU announced that it would require a NBME-CCSE score of at least 222 (the "Amended SMU Standard") before the University would consider to allow a student to take the USMLE Step 2 CK (SMU's "Second Announcement"). A true and correct copy of SMU's Second Announcement is attached hereto as **Exhibit 7**.

53.     Before an applicant receives a permit to take the Step 2 CK exam, the applicant's medical school must provide verification of the applicant's student or graduate status.

54.     Alex is a student at SMU and has requested a permit to take Step 2 CK; however,

SMU has refused, and continues to refuse, to provide the necessary verification of his status as a current student at the University.

55.     Similarly, SMU also is refusing to allow students to take the Occupational English Test required by the ECFMG, short of meeting other of the University's unilaterally-imposed *ad hoc* requirements; however, because no action from the University is required for students to register for and take the Occupational English Test, SMU has resorted to threats of disciplinary action to compel students to abide by the University's arbitrary, *ad hoc* requirements.

56.     Specifically, in or about September 2020, SMU threatened students with dismissal if they take the Occupational English Test before first completing the University's own pre-test preparation course, as one element of multiple written agreements the University is forcing students to sign (SMU's "Coerced Agreements").[3]

57.     Two of the three Coerced Agreements specifically provide as follows:

> I agree that I am required to pass a Spoken English Practice Test.  I further agree that I will not take the OET for the first time until certified to do so by the School. I acknowledge that taking the OET for the first time without certification may lead to disciplinary action up to and including dismissal from the School and/or the School withholding my transcripts or other official School documentation. . . .

*See* "OET Attestation" **[Exhibit 8]** and "SMUSOM Application and Attestation for Clincal [*sic*] Skills Certification" **[Exhibit 9]**.

58.     Alex already was registered to take the Occupational English Test when SMU initially presented him with the University's Coerced Agreements, imposing this new *ad hoc*

---

[3] The Coerced Agreements include the "OET Attestation," a true and correct copy of which is attached hereto as **Exhibit 8**; the "SMUSOM Application and Attestation for Clincal [*sic*] Skills Certification," a true and correct copy of which is attached hereto as **Exhibit 9**; and the "Commitment to Provide and Authorization for Release and Disclosure of Test Scores and Residency Placement Information" (the "Commitment"), a true and correct copy of which is attached hereto as **Exhibit 10**.

requirement for the first time.

59.     If Alex now takes the necessary Occupational English Test as scheduled, he risks being dismissed from by SMU, thereby ending his medical career before it even begins.

60.     The third Coerced Agreement, the "Commitment to Provide and Authorization for Release and Disclosure of Test Scores and Residency Placement Information" (the "Commitment"), gives the University access to, *inter alia*, additional testing results "both during ***and after*** . . . attendance at [SMU]," including long after the student has graduated and gone from the University.  *See* Commitment **[Exhibit 10]** (emphasis added).

61.     Failure to report or otherwise grant SMU the right to obtain this data, purportedly for SMU to use in connection with "regulatory and accreditation requirements," but likely also in the University's marketing efforts, "may lead to disciplinary action up to and including dismissal from the School and/or to the School's withholding of . . . transcripts or other official School documentation."  *See* Commitment **[Exhibit 10]**.

**The Match:**

62.     The National Resident Matching Program (the "Match") is an algorithm-based system used to place medical students into residency training programs at United States teaching hospitals.

63.     The Match is conducted once annually, in March.

64.     The application period for medical students and graduates applying to the 2021 Match opened in June 2020.

65.     Residency programs may begin reviewing applications for the 2021 Match on October 21, 2020, at 9:00 a.m.

66.     Thereafter, residency programs will extend interview offers to selected applicants

based on the strength of that individual's Match application.

67.     After interviewing, residency programs and applicants both rank their top preferences.  The Match algorithm then "matches" residency programs and applicants that both rated each other well.

68.     To participate in the Match, graduates of foreign medical schools, such as SMU, must meet the requirements for ECFMG certification by the "Rank Order List Certification Deadline" (in February of the year of the Match).

69.     To acquire ECFMG certification, foreign medical graduates must (1) obtain passing scores on USMLE Step 1 and Step 2 CK exams, (2) pass the Occupational English Test, (3) submit attestation of the individual's clinical skills from clinical rotations, and (4) obtain a medical diploma of medical education from a registered medical school.

70.     SMU is a registered medical school that confers medical degrees on its graduates in accordance with the requirements for ECFMG certification.

71.     Alex has completed all of the required academic coursework necessary to receive his medical degree from SMU, including basic sciences and clinical rotations.

72.     Alex has received a passing score on the USMLE Step 1 exam, also in accordance with the requirements for ECFMG certification.

73.     If Alex does not have his application for the 2021 Match filed and completed, including USMLE Step 2 CK test scores and clinical skills attestation, by October 21, 2020, his application will not be competitive with those of other applicants, and he will not be offered interviews for residency programs.

74.     Without a USMLE Step 2 CK score on his application, Alex will not match to any residency program in the 2021 Match.

75.     Additionally, if Alex does not have his ECFMG certification, which requires, *inter alia*, that SMU have conferred Alex's medical degree upon him by the "Rank Order List Certification Deadline" in February 2021, Alex will not match to any residency program in the 2021 Match.

76.     If Alex does not match to a residency program in the 2021 Match, Alex's entire career will be delayed by at least one full year.

77.     Delaying Alex's residency Match would cause irreparable harm to Alex, as well as substantial monetary damages including, *inter alia*, the additional living expenses incurred in the time waiting for the next Match; the additional student expenses, including interest accruing on student loans, during the time Alex is waiting for the next Match; and lost income, both in the time Alex is waiting for the next Match and by shortening the ultimate duration of his working medical career as a whole.

**SMU's Fraudulent, Deceptive, and Unfair Trade Practices:**

78.     SMU is a for-profit medical school, in the business of educating aspiring medical doctors for the purpose of profiting its shareholder(s).

79.     SMU offers its students education loans through the William D. Ford Federal Direct Unsubsidized Stafford and Grad PLUS Loan programs, administered by the U.S. Department of Education (the "U.S. Federal Loans").

80.     SMU engages in substantial advertising and marketing campaigns directed to prospective medical students in North America, including in the State of Florida.

81.     SMU uses its website and printed materials, such as the Official Catalog **[Exhibit 3]**, to misinform and otherwise deceive prospective students as to licensing exam and graduation requirements.

82.     By way of example, the "Frequently Asked Questions" section of SMU's website (the "FAQ") fraudulently and deceptively omits the University's arbitrary exam requirements for graduation, a necessary element of licensure, thereby misinforming prospective students as follows:

**What tests will I need to take to get licensed in the U.S.?**

In order to be licensed and practice medicine in the United States, the Educational Commission for Foreign Medical Graduates (ECFMG) requires students to take and pass the United States Medical Licensing Examination (USMLE).

St. Matthew's University students and graduates are eligible to sit for these exams. The USMLE has three steps, two of which are taken by students while in medical school.  Students must take and pass USMLE Step 1 prior to beginning the Clinical Sciences curriculum.  USMLE Step 2 Clinical Skills (Step 2 CS) and Step 2 Clinical Knowledge (Step 2 CK) are taken prior to graduation.  Step 3 of the USMLE, the final step for licensing, is taken after graduation, during, or at the conclusion of residency training.

*See* FAQ at 4-5, a true and correct copy of which is attached hereto as **Exhibit 11**.

83.     SMU's FAQ makes no mention of any requirement that students take the NBME exams.

84.     SMU utilizes its students' USMLE exam results to market itself to prospective students as a school with a high pass-rate.  For instance, SMU's website includes a scrolling banner on most if not all pages that displays, *inter alia*, "97% First Time Pass Rate on USMLE Step 1." *See, e.g.*, FAQ **[Exhibit 11]**.

85.     By prohibiting otherwise qualified students from taking the USMLE Step 2 CK, unless that student ***first*** demonstrates a level of proficiency ***well in excess*** of that necessary to pass the Step 2 CK, SMU is able to skew its pass-rate higher than it would otherwise be if all qualified students were permitted to take the Step 2 CK exam.

86.     Additionally, by causing students who do not meet the University's arbitrarily high

Step 2 CK exam pre-test requirements to delay furthering their education, by requiring such students to then pay for remediation courses, and by imposing additional and unnecessary third-party testing and graduation requirements, including some conducted by SMU alumni, SMU and its affiliates further profit from the SMU students that the University is victimizing in this manner.

87.     To date, Alex has paid approximately $300,000.00 for tuition, fees, and other costs related to his medical education in furtherance of obtaining his medical degree from SMU and becoming a physician licensed to practice medicine in the United States, primarily through U.S. Federal Loans.

88.     At this point in Alex's medical school education, it is neither possible nor reasonably practicable for Alex to transfer to another medical school to complete his medical degree and licensing requirements.

89.     Additionally, SMU has dismissed students for failing exams administered by third-party licensing organizations.

90.     If Alex does not pass the unnecessary NBME-CCSE exam to SMU's arbitrarily high, ever changing, and ever increasing standard – far exceeding the passing score required by the NBME that Alex already has achieved – the University will dismiss Alex, thereby putting an abrupt end to Alex's medical education, terminating his forthcoming medical career before it even begins, and leaving him with no degree, no path to licensure, insurmountable student loan debt, no employment prospects, and years of his life wasted pursuing a goal that will never be realized, all so that SMU can enrich itself and its affiliates, and manipulate its student test scores to attract more prospective students that the University will ultimately defraud in the same or similar manner as

it has Alex.[4]

**Other General Allegations:**

91.     Alex has been required to retain the services of the undersigned attorneys to represent his interests in this matter and is obligated to pay a reasonable fee for their services.

92.     All conditions precedent to the institution of this action have been performed, waived, or otherwise excused.

<u>**Count I – Declaratory Judgment**</u>

Plaintiff restates the allegations in the foregoing Paragraphs 1 through 92 as if fully set forth herein.

93.     This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.

94.     Plaintiff demands a declaration that: (i) Defendant is engaged in trade or commerce and Plaintiff is a consumer of Defendant's goods and services; (ii) Defendant represented to incoming students a particular set of requirements for graduation and licensure; (iii) Defendant utilized such representations to induce students, including Plaintiff, to pay substantial sums of money in tuition and fees and to undertake substantial student loan debt, including through U.S. Federal Loans, in furtherance of their medical education and licensure; (iv) Defendant's representations were false; (v) Defendant unilaterally changed its requirements for graduation and licensure in an arbitrary and capricious manner not consistent with the standards of other medical schools or licensing entities; (vi) Defendant's unilateral changes to its requirements for graduation and licensure were improper and unfair to students, including Plaintiff; (vii) Defendant is

---

[4] SMU has a history, pattern, and practice of unilaterally changing graduation requirements for already-enrolled students nearing the completion of their medical education, thereby preventing students from graduating, taking licensing exams, and entering the Match. *See, e.g.*, the Middle District of Florida case styled *Maraj Kidwai v. St. Matthew's University School of Medicine*, Case No. 6:12-cv-01061-RBD-GJK.

prohibited from engaging in such deceptive, unfair, or otherwise improper acts; (viii) Defendant did engage in such prohibited acts; (ix) Defendant and Plaintiff share a special relationship with certain obligations and expectations as a result of that relationship; (x) Defendant violated its obligations to students, including Plaintiff, by impeding, obstructing, or otherwise preventing Plaintiff from taking the USMLE Step 2 CK exam and the Occupational English Test; (xi) Defendant violated its obligations to students, including Plaintiff, by refusing to attest to Plaintiff's clinical skills in satisfaction of the USMLE Step 2 CS alternative pathway by way of Plaintiff's clinical rotation patient encounters; (xii) Defendant is violating its obligations to students, including Plaintiff, by refusing to confer a medical degree on Plaintiff, once Plaintiff successfully takes and passes the USMLE Step 2 CK exam; (xiii) Defendant is violating its obligations to students, including Plaintiff, by impeding, obstructing, or otherwise preventing Plaintiff from obtaining ECFMG certification; (xiv) Defendant is violating its obligations to students, including Plaintiff, by impeding, obstructing, or otherwise preventing Plaintiff from participating in the 2021 Match; (xv) Defendant's violations of its obligations to students, including Plaintiff, are causing or will cause irreparable harm to Plaintiff; (xvi) an injunction against Defendant, enjoining Defendant from continuing such violations and requiring Defendant to act in accordance with Defendant's obligations and Plaintiff's expectations, is necessary to prevent such irreparable harm; and (xvii) such an injunction would not be harmful to Defendant and would not disserve the public interest.

95.     There is a *bona fide*, actual, present practical need for the declaration.

96.     The declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

97.     Some power, privilege, or right of Plaintiff, and duty or liability of Defendant, is

dependent upon the facts or the law applicable to the facts.

98.     Defendant has an actual, present, adverse, or antagonistic interest in the subject matter, either in fact or law.

99.     The antagonistic and adverse interests are all before the Court by proper process.

100.    The relief sought is not merely giving of legal advice by the Court or the answer to questions propounded from curiosity.

## Count II – Deceptive and Unfair Trade Practices

Plaintiff restates the allegations in the foregoing Paragraphs 1 through 92 as if fully set forth herein.

101.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act") renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

102.    At all material times, Defendant solicited, advertised, offered, and provided goods and services in the form of medical education to students pursuing a medical degree and licensure to practice medicine, and thereby was engaged in trade or commerce as defined by FDUTPA.

103.    At all material times, Plaintiff was a consumer as defined by FDUTPA.

104.    Defendant's acts and practices are unconscionable, unfair, and/or deceptive, as detailed in the foregoing Paragraphs 9 through 90.

105.    Plaintiff has been aggrieved by Defendant's unconscionable, unfair, and/or deceptive acts and practices.

106.    As a result of Defendant's unconscionable, unfair, and/or deceptive acts and practices, Plaintiff has been damaged.

107.    Plaintiff is entitled to declaratory, injunctive, and monetary relief pursuant to the

Act.

108.    Plaintiff is further entitled to recover his attorneys' fees and costs pursuant to Section 501.2105 of the Florida Statutes.

**<u>Count III – Breach of Contract</u>**

Plaintiff restates the allegations in the foregoing Paragraphs 1 through 92 as if fully set forth herein.

109.    The Student Handbook is a valid and binding contract between Plaintiff and Defendant.

110.    Defendant breached material terms of the contract when it unilaterally, arbitrarily, and capriciously changed the Requirements for testing and graduation, and when it refused to permit Plaintiff to take the USMLE Step 2 CK exam.

111.    Defendant's breach of the contract caused damage to Plaintiff.

**<u>Count IV – Breach of Contract</u>**

Plaintiff restates the allegations in the foregoing Paragraphs 1 through 92 as if fully set forth herein.

112.    The Revised Handbook is a valid and binding contract between Plaintiff and Defendant.

113.    Defendant breached material terms of the contract when it unilaterally, arbitrarily, and capriciously changed the Requirements for testing and graduation, and when it refused to permit Plaintiff to take the USMLE Step 2 CK exam.

114.    Defendant's breach of the contract caused damage to Plaintiff.

## Count V – Breach of Contract

Plaintiff restates the allegations in the foregoing Paragraphs 1 through 92 as if fully set forth herein.

115.    The Current Handbook is a valid and binding contract between Plaintiff and Defendant.

116.    Defendant breached material terms of the contract when it unilaterally, arbitrarily, and capriciously changed the Requirements for testing and graduation, and when it refused to permit Plaintiff to take the USMLE Step 2 CK exam.

117.    Defendant's breach of the contract caused damage to Plaintiff.

WHEREFORE, Plaintiff Alejandro Estrada demands judgment from this Honorable Court in his favor and against Defendant St. Matthew's University School of Medicine, as follows:

(i)    Declaring that Defendant is engaged in trade or commerce and Plaintiff is a consumer of Defendant's goods and services; that Defendant represented to incoming students a particular set of requirements for graduation and licensure; that Defendant utilized such representations to induce students, including Plaintiff, to pay substantial sums of money in tuition and fees and to undertake substantial student loan debt, including through U.S. Federal Loans, in furtherance of their medical education and licensure; that Defendant's representations were false; that Defendant unilaterally changed its requirements for graduation and licensure in an arbitrary and capricious manner not consistent with the standards of other medical schools or licensing entities; that Defendant's unilateral changes to its requirements for graduation and licensure were improper and unfair to students, including Plaintiff; that Defendant is prohibited from engaging in such deceptive, unfair, or otherwise improper acts; that Defendant did engage in such prohibited acts; that Defendant and Plaintiff share a special relationship with certain obligations and

expectations as a result of that relationship; that Defendant violated its obligations to students, including Plaintiff, by impeding, obstructing, or otherwise preventing Plaintiff from taking the USMLE Step 2 CK exam and the Occupational English Test; that Defendant violated its obligations to students, including Plaintiff, by refusing to attest to Plaintiff's clinical skills in satisfaction of the USMLE Step 2 CS alternative pathway by way of Plaintiff's clinical rotation patient encounters; that Defendant is violating its obligations to students, including Plaintiff, by refusing to confer a medical degree on Plaintiff, once Plaintiff successfully takes and passes the USMLE Step 2 CK exam; that Defendant is violating its obligations to students, including Plaintiff, by impeding, obstructing, or otherwise preventing Plaintiff from obtaining ECFMG certification; that Defendant is violating its obligations to students, including Plaintiff, by impeding, obstructing, or otherwise preventing Plaintiff from participating in the 2021 Match; that Defendant's violations of its obligations to students, including Plaintiff, are causing or will cause irreparable harm to Plaintiff; that an injunction against Defendant, enjoining Defendant from continuing such violations and requiring Defendant to act in accordance with Defendant's obligations and Plaintiff's expectations, is necessary to prevent such irreparable harm; and that such an injunction would not be harmful to Defendant and would not disserve the public interest;

(ii)    Declaring that Defendant violated the Florida Deceptive and Unfair Trade Practices Act by, *inter alia*, misrepresenting graduation and licensing requirements, publishing false information, unilaterally changing the graduation and licensing requirements specified in the Student Handbook, Revised Handbook, and Current Handbook, in a manner that is improper and unfair; and improperly and unfairly impeding current students' progress toward graduation and licensure to manipulate test results as a means to better market itself to prospective students, and to further enrich Defendant and affiliates of Defendant; enjoining Defendant from committing

future violations of the Act; awarding Plaintiff monetary damages in an amount to be determined at trial; and awarding Plaintiff his attorneys' fees and costs pursuant to Section 501.2105 of the Florida Statutes;

(iii)     Finding that the Student Handbook, the Revised Handbook, and the Current Handbook are contracts that, in part, govern the relationship between Plaintiff and Defendant; finding that Defendant breached its obligations pursuant to the contracts, causing damage to Plaintiff; ordering that Defendant perform in accordance with the terms of the operative contract; and awarding Plaintiff monetary damages for all breaches that cannot be remedied by specific performance in an amount to be determined at trial;

(iv)     Awarding such other and further relief as the Court deems proper and just.

### Demand for Trial by Jury

Plaintiff demands trial by jury on all issues so triable.

Dated:  October 1, 2021

Respectfully submitted,

**MAGER PARÚAS, LLC**
2719 Hollywood Boulevard
Hollywood, Florida 33020
Phone: 954-763-2800
Email: service@mpjustice.com

*/s/  Scott A. Mager*
Scott A. Mager, Esq. (FBN: 768502)

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 1, 2021, I electronically filed the foregoing with the

Clerk of Court via the CM/ECF system, which will email a Notice of Electronic Filing and serve

a copy of the foregoing document to:

Dale A. Evans, Jr., Esq.
LOCKE LORD LLP
777 South Flagler Drive
East Tower, Suite 215
West Palm Beach, FL 33401
dale.evans@lockelord.com
tina.sullivan@lockelord.com
autodocket@lockelord.com

/s/ Scott A. Mager
Scott A. Mager, Esq.